Cathy Carmen **REDMOND**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 09–99–294 CR, 09–99–295 CR.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 12, 2000.

Decided Nov. 8, 2000.

William E. Hall, Jr., George E. Renneberg, Law Offices of William E. Hall, Jr., Conroe, John D. MacDonald, II, Conroe, for appellant.

Michael A. McDougal, Dist. Atty., Peter C. Speers, III, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

A jury found Cathy Carmen Redmond guilty of Intoxication Manslaughter and Intoxication Assault, in a single trial on two indictments. The trial court assessed as punishment concurrent sentences of four years' confinement in the Texas Department of Criminal Justice, Institutional Division. Redmond raises ten issues on appeal.

■ The first two issues challenge the legal and factual sufficiency of the evidence to support the convictions. Redmond argues the State failed to prove she and not one of the other occupants was the driver of the vehicle. When reviewing the legal sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). When reviewing the factual sufficiency of the evidence, we view all the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v.*

*State*, 958 S.W.2d 404, 410 (Tex.Crim.App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

■ Three people, all of them intoxicated, were in the appellant's truck at the time of the accident: Redmond, Chad Pearson, and Nick Gottardo[1]. The truck crossed into the oncoming lane of traffic, colliding with a vehicle driven by Donna Beth Mendez[2]. Daniel House and Timothy White came upon the scene within two minutes of the accident. One male, Gottardo, was up the road a short distance, laying on the side of the road. Another male, Pearson, was in front of the appellant's truck and walked around behind the appellant's pickup towards the driver's side. He said, "I really messed up this time." Redmond lay unconscious face down right next to the pickup by the driver's side door. Redmond regained consciousness and started screaming about her legs.

Ronald Riley, the paramedic on the scene, treated Redmond as the driver, but he did not recall why he believed she had been driving. Trooper George Holleway spoke with the appellant while she was in the ambulance. Asked what happened, Redmond responded, "I was going down the road." Holleway asked, "Are you telling me you were driving the vehicle?" Redmond nodded in the affirmative.

Pearson testified Redmond was driving when the accident occurred. At the hospital, Pearson told Trooper Holleway Redmond was the driver. Redmond testified she gave the keys to her truck to the men, but she could not recall who drove. She could not recall being in the ambulance or speaking with Trooper Holleway.

The pickup's steering column broke from the impact of the driver's body in the collision. Redmond's injuries included fluid around her lungs, a collapsed lung,

---

1. Gottardo is the complainant in the intoxication manslaughter indictment in Cause No. 98–11–01296–CR (Appeal No. 09–99–294 CR).

2. Mendez is the complainant in the intoxication assault indictment in Cause No. 98–11–01297–CR (Appeal No. 09–99–295 CR). At the time of trial, her surname was Ward.

and multiple rib fractures, a broken tooth and nose, and fractures to the tibia and fibula of her right leg. These injuries were consistent with having been the driver. Her blood was recovered from the steering wheel. Neither Gottardo nor Pearson suffered chest injuries.

A rational trier of fact, having heard Pearson's testimony, Redmond's admission to Holloway, and the physical evidence, could have found Redmond was operating the vehicle at the time of the accident. Issue one is overruled.

There is evidence in the record supporting the appellant's claim that she was a passenger, including her testimony that she was not capable of driving at the time. The first eyewitness on the scene thought Pearson was the driver because Pearson stated he had really messed up. Defense counsel cross-examined Pearson on his grand jury testimony, in which he claimed he could not recall the accident. Redmond testified she did not sustain all of the injuries reflected in the medical records. She also raised the possibility that the records were not hers, because the name listed is Kathy Redman, not Cathy Redmond. Her date of birth is 11–1–62. The medical records list her age as 62 in one place and her date of birth as 1–1–00 in another. The accident occurred November 4, 1995; the medical records reflect the patient was treated from November 5 through 13 of 1995. Viewing all of the evidence impartially, we cannot conclude the evidence supporting the verdict is so weak, or the evidence preponderating against a verdict of guilt so overwhelming, that a verdict of guilty would be clearly wrong and unjust. Issue two is overruled.

Issue three asks, "Did the trial court err in failing to grant appellant's motion to suppress an unwarned custodial statement?" Holloway had not yet received any information from the other people involved in the accident when he entered the ambulance. Redmond was in the ambulance, wearing a cervical collar and an oxygen mask. Trooper Holleway asked her what happened, then asked her if she had been driving. The paramedic moved her oxygen mask so she could respond, and Holloway noted incoherent speech and odor indicative of intoxication. At that time, Redmond was not in his custody, nor was she under arrest. She was, however, strapped to a gurney and her legs were broken, so she was not in a position to walk away from the encounter. Holleway left the ambulance. At that point Redmond became a suspect. When Redmond's toxicology report indicated a blood alcohol level of 0.168, Holleway obtained a warrant for her arrest.

The appellant argues her admission that she was driving was a custodial statement suppressable for failure to comply with Article 38.22. See TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3 (Vernon Pamph. 2000). The determination of custody must be made on a case-by-case basis after considering all of the objective circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App.1996). A person is in custody only if, under the circumstances, a reasonable person would believe that her freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994). Relevant factors in determining whether a person was in custody at the time a statement is taken include whether there was at that time probable cause to make an arrest, whether the suspect was the focus of the investigation, and the objective manifestations of the officer's subjective belief. *Dowthitt*, 931 S.W.2d at 254. At least four general situations may constitute custody: (1) when the suspect is physically deprived of her freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that she cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that her freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforce-

ment officers do not tell the suspect that she is free to leave. *Id.* at 255. The restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.*

■ In this case, the physical restrictions upon Redmond's movement were due to her injuries and medical treatment, and were not attributable to the actions of the persons investigating the accident. There is no indication the investigation focused on her before she made the statement. Trooper Holleway had not yet developed probable cause to arrest Redmond, and there is no indication she was transported under guard even after the interrogation ceased. As Redmond was not in custody when she was questioned, the trial court did not err in denying the appellant's motion to suppress the statements. Issue three is overruled.

Issue four inquires, "Did the trial court err in failing to permit Appellant to impeach the testimony of the witness Pearson about his bias?" Redmond sought to impeach Pearson with a probated misdemeanor conviction for driving while intoxicated in which a motion to revoke community supervision was pending, and a pending assault charge. Outside the presence of the jury, Pearson testified that his probation had been revoked but he had not yet been sentenced, and that the "assault charge" was an allegation in the revocation motion. According to Pearson, there was a plea bargain agreement to continue on probation.[3] Defense counsel told the trial court he was not suggesting that the District Attorney's Office had made a deal with Pearson, but suggested that there might be the hope of favored treatment. The trial judge noted that counsel had not asked Pearson if he felt that there is some benefit to him, and that no connection had been drawn between the pending charge and Pearson's

testimony. Defense counsel then elicited testimony from Pearson that he had not been offered anything by the State in return for his testimony before the court.

■ A defendant may elicit on cross-examination facts intended to demonstrate the witness's vulnerable relationship with the State. *Carroll v. State,* 916 S.W.2d 494, 500 (Tex.Crim.App.1996). In order to impeach a witness with evidence of pending criminal actions, the proponent of the evidence must establish that the evidence is relevant. *Carpenter v. State,* 979 S.W.2d 633, 634 (Tex.Crim.App.1998). The proponent must establish some causal connection or logical relationship between the pending charges and the witness's vulnerable relationship or potential bias or prejudice for the State, or testimony at trial. *Id.* As was the case in *Carpenter,* it is possible the witness believed his testimony in this case would be of some benefit to him in the pending case, but the appellant does not provide evidence to support her assertion. Issue four is overruled.

■ Issue five contends the State's improper investigative procedures deprived her of due process of law. Redmond argues the investigation focused on her early on, and the investigating officer did not explore a theory that Gottardo had been driving or gather evidence later noticed by the salvage operator. She also suggests Pearson perjured himself. In its brief, the State suggests that the case relied upon by the appellant *Ex parte Brandley,* 781 S.W.2d 886 (Tex.Crim.App.1989), is an "aberration in Texas law." Doubtless this sentiment is shared by few outside the Montgomery County District Attorney's Office; the opinion has not been overruled and were it to apply in this case, we would follow it. Nevertheless, Redmond's due process argument is not supported by the record. Trooper Holleway focused his investigation on the appellant after she told

---

3. Pearson's description does not comport with criminal procedure, but we do not have the benefit of the file in the pending case or testimony from a witness familiar with criminal practice to establish the actual procedural posture of the case.

him she had been driving her truck. She did not establish that exculpatory evidence was lost or that the law enforcement agents exercised bad faith in collecting evidence. Although she is critical of what she calls Pearson's "recovered memory," the appellant has not established Pearson committed perjury. Issue five is overruled.

Issue six inquires, "Was trial counsel ineffective in failing to elect punishment to the jury?" Trial counsel filed a written election to have punishment assessed by the court and an application for community supervision. From the file stamp on the documents, it appears they were simultaneously filed with the judge on the morning trial commenced. The pre-trial proceedings were not included in the reporter's record.

Both indictments contained allegations of the use of a deadly weapon, making the appellant ineligible for judge-ordered community supervision. TEX.CODE.CRIM.PROC. ANN. art. 42.12, § 3g (Vernon Supp.2000). Special issues on the use of a deadly weapon were submitted to the jury in both charges.

■■■■ To prevail on an ineffective assistance of counsel claim, the appellant must establish that (1) counsel's performance fell below the standards of reasonable competency, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770 (Tex. Crim.App.1999). The appellant must overcome the strong presumption that counsel's actions fall within the wide range of reasonable professional assistance by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then affirmatively proving that they fell below the professional norm for reasonableness. *Jackson v. State,* 973 S.W.2d 954 (Tex.Crim.App. 1998). Failure to make the required

showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *McFarland v. State,* 845 S.W.2d 824, 848 (Tex.Crim.App.1992).

■■■ Redmond contends trial counsel was ineffective in failing to elect punishment to the jury. The election belongs to Redmond, not to her trial counsel, so his ineffectiveness would lie in not providing sufficient information to make an informed choice, or in failing to properly execute her election. Redmond suggests counsel may have been unaware of the deadly weapon allegations, may not have realized a deadly weapon finding would preclude judge-ordered community supervision, or may have filed the wrong document by mistake. The record provides no hint that counsel mistakenly believed Redmond would be probation-eligible if she went to the judge for punishment. Nothing in the reporter's record indicates that Redmond believed she could be placed on community supervision, or that she elected to have the jury assess punishment but counsel filed the wrong election. Had the jury answered "We do not" to the special issues, no deadly weapon finding would be authorized and Section 3g would not have applied. Such a scenario is remote but not impossible. Furthermore, had the application for community supervision been inadvertently filed, there would be no prejudice to the appellant. One might surrender the opportunity for community supervision upon viewing a venire composed of persons appearing to be less merciful than the presiding judge. Such speculation demonstrates the shortcomings attendant in challenging counsel's performance without the benefit of a hearing directly addressing that issue.

■■■ The presumption of reasonable effectiveness cannot ordinarily be overcome absent evidence in the record of the attorney's reasons for his conduct. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). In this appeal, we have no record, usually developed in a motion for new trial hearing or on writ of habeas corpus, ex-

plaining counsel's thought processes and trial strategy. Redmond fails to meet the first prong of *Strickland.* Issue six is overruled.

▇▇▇ Issue seven asks, "Was counsel ineffective for failing to support the motions for new trial with an affidavit?" Counsel's attempt to file supporting affidavits came after the time for supplementing motions for new trial had passed. *See* Tex.R.App.P. 21.4(b). The trial court refused to consider the affidavits.

The appellant was represented by retained counsel throughout trial and appeal. Counsel did not tell the trial court why he failed to file affidavits within 30 days of sentencing, but argued he should be permitted to supplement the motions with affidavits. Assuming counsel's performance was deficient, Redmond failed to establish prejudice by demonstrating that the motion for new trial would have been granted had the trial court conducted the evidentiary hearing. *See Bacey v. State,* 990 S.W.2d 319, 333 (Tex.App.—Texarkana 1999, no pet.) (failure to set motion for new trial hearing within 75 days); *Bryant v. State,* 974 S.W.2d 395, 400 (Tex.App.—San Antonio 1998, pet. ref'd) (failure to file motion for new trial). Redmond's late-filed affidavit does not establish prejudice. *See Flores v. State,* 18 S.W.3d 796, 800 (Tex.App.—Austin 2000, no pet.) (refusing to consider late-filed affidavit in claim of ineffective assistance of counsel). The trial judge's offhand comment that she might grant a writ of habeas corpus does not establish a reasonable probability that, but for counsel's failure to file affidavits with the motions for new trial, the result of the proceeding probably would have been different. Issue seven is overruled.

Redmond presents a single argument for her remaining issues:

Issue Eight: Did the trial Court err in ruling that a motion for new trial alleging matters outside the record cannot be heard without an affidavit supporting the allegations?

Issue Nine: Did the trial court err in refusing to hear the motions for new trial on their merits since they were adequately supported by affidavits supplemented to, and not amending, the original motions for new trial?

Issue ten: Did the trial court err in failing to hear and grant the motions for new trial in the form originally filed in that they were not ineffective as originally presented without affidavit?

▇▇▇ Redmond argues that motions for new trial, being governed by Texas Rule of Appellate Procedure 21, cannot be subject to a judicially imposed affidavit requirement. The basic premise for this argument, that the rules do not require the motion to be supported by an affidavit, is incorrect. The Rules of Appellate Procedure do impose an affidavit requirement. *State v. Pilkinton,* 7 S.W.3d 291, 293 (Tex. App.—Beaumont 1999, pet. ref'd); Tex. R.App.P. 10.2 ("A motion need not be verified unless it depends on . . . [facts not in the record, not within the court's knowledge in its official capacity, or not within the personal knowledge of the attorney signing the motion], in which case the motion must be supported by affidavit or other satisfactory evidence.")

Redmond argues an affidavit requirement cannot be imposed by common law because the Rules of Appellate Procedure supply the sole procedure for the motion. This argument fails for several reasons. First of all, procedural rules are subject to judicial interpretation in general and the Code Construction Act in particular. *See Castillo v. State,* 865 S.W.2d 89, 96 (Tex. App.—Corpus Christi 1993, no pet.); *McVickers v. State,* 838 S.W.2d 651 (Tex. App.—Corpus Christi 1992), *affirmed,* 874 S.W.2d 662 (Tex.Crim.App.1993) (applying the Code Construction Act to the Rules of Criminal Evidence); Tex.Gov't Code Ann. § 311.002(4) (Vernon 1998) (applying the Code Construction Act to "each rule adopted under a code"). The Code Construction Act permits considering "common law or former statutory provisions,

including laws on the same or similar subjects[.]" TEX.GOV'T CODE ANN. § 311.023(4) (Vernon 1998). Secondly, Rule of Appellate Procedure 21 sets forth when a motion for new trial is required, when granting a motion for new trial is mandatory, when the motion must be filed, how and when it may be amended, the type of evidence permitted in the hearing, when and how the court rules on the motion, and the effect of the ruling on the motion. TEX. R.APP.P. 21. Conspicuously absent from Rule 21 are any requirements for the form of the motion. Thus, Redmond's argument that the sole requirements are those contained in the rule must fail.

The judicially imposed requirement of an affidavit or verification as a prerequisite for an evidentiary hearing on a motion for new trial has existed throughout the various incarnations of the governing precept. *Jordan v. State*, 883 S.W.2d 664 (Tex. Crim.App.1994) (1986 Rules of Appellate Procedure); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App.1993) (1986 Rules of Appellate Procedure); *McIntire v. State*, 698 S.W.2d 652, 658 (Tex.Crim.App. 1985) (1981 Code of Criminal Procedure); *Hicks v. State*, 75 Tex.Crim. 461, 171 S.W. 755, 763 (1914) (opinion on rehearing) (1911 Code of Criminal Procedure); *Mallet v. State*, 9 S.W.3d 856, 865 (Tex.App.— Fort Worth 2000, no pet.) (1997 Rules of Appellate Procedure). *See also Callahan v. State*, 937 S.W.2d 553 (Tex.App.—Texarkana 1996, no pet.); *Mendoza v. State*, 935 S.W.2d 501, 503 (Tex.App.—Waco 1996, no pet.); *Sandoval v. State*, 929 S.W.2d 34 (Tex.App.—Corpus Christi 1996, pet. ref'd); *DeGay v.. State*, 923 S.W.2d 847 (Tex.App.—Beaumont 1996, pet. ref'd).

Redmond's motions for new trial were not supported by affidavits. The "supplemental" affidavits filed more than 30 days after sentencing were filed for the purpose of amending the motions for new trial to correct the defects, and were governed by the time constraints of Rule 21.4(b). Because the motions for new trial were not supported by affidavits, the trial court did not abuse its discretion in refusing to conduct an evidentiary hearing on the motions. *Jordan v. State*, 883 S.W.2d at 665.

Redmond argues in the alternative that she established ineffective assistance of counsel without reference to matters extraneous to the record. This argument fails for the reasons discussed in our consideration of issue six. Issues eight through ten are overruled. The judgments of the trial court are affirmed.

AFFIRMED.