In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-090 CR


____________________



JOSE RAMOS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. 22,297






MEMORANDUM OPINION


 In a trial before the bench, Jose Ramos was convicted of sexual assault and
sentenced to ten years' confinement in the Texas Department of Criminal Justice,
Institutional Division. Ramos raises two issues on appeal.

 Issue one claims Ramos received ineffective assistance of counsel during the
guilt/innocence phase of the trial. Specifically, appellate counsel contends trial counsel
failed in the following:


 To read witness statements and utilize them in cross-examination;
 By conceding appellant's guilt;
 To object to inadmissible evidence in the form of reference to numerous adjudicated
and unadjudicated extraneous offenses, hearsay, opinion, and prior misconduct;
 To object to inadmissible evidence of appellant's national origin and ethnicity;
 By introducing evidence for no valid purpose;
 To file pre-trial motions in limine for exclusion; and
 Closing prematurely, thus creating a prejudicial bias in the trial court.


We address each complaint in turn.

 First, appellate counsel claims defense counsel neglected to read the victim's prior
statements before trial, and consequently failed to impeach C.A. at trial with the
inconsistencies in her statements. In the first statement, given February 25, C.A. told
Deputy Davidson "she was lying in bed" when Ramos walked in the bedroom. C.A. said
when Ramos finished, he went in the kitchen, and got a drink and sat at the table for a
while. C.A. said she did not tell anyone of the assault until February 24, when she called
her mother. The next person she told was her husband, about twenty minutes later. C.A.
stated Ramos had offered her drugs before but she always refused.

 C.A. gave another statement to Investigator Torres on February 27. C.A. said she
was in the bedroom getting dressed when Ramos came in. Ramos grabbed her and pushed
her down on the bed. C.A. was on her back, Ramos was holding both of her hands with
one of his, he unzipped his pants, pulled out his penis, placed both of her legs on top of
his shoulders and put his penis inside of her. Ramos kept his penis inside of her for about
three minutes until he ejaculated inside of her. Ramos held her hands down the whole
time. C.A. stated Ramos walked in the living room and sat down at the dining room table. 
She dressed, walked in and told him to leave. Ramos asked if she wanted to do it again
and she said no, her daughter walked in and Ramos left.

 At trial, C.A. testified the first time she reported the assault was on February 24. 
According to C.A., she told her husband of the assault on Saturday night and then called
the police when her husband left with a loaded shotgun. C.A. said she "didn't tell nobody
till I saw my husband." On direct examination C.A. testified she had just gotten out of the
shower when she heard Ramos say, "hey." She told him to hang on, she was getting
dressed. According to C.A. Ramos walked in and put her on the bed, he held her hands
and raped her. C.A. testified she did not recall if Ramos ejaculated inside her and did not
remember what she put in her statement. C.A. stated she thought he ejaculated on her
stomach. On cross, C.A. testified she could not get up because Ramos had "his whole
body on me." C.A. testified that when she came out of the room, Ramos was rolling a
joint at her table. 

 C.A.'s prior statements were not admitted into evidence during the trial, but are
contained in the PSI report. We cannot agree with appellate counsel that the only possible
explanation for trial counsel not impeaching C.A. with the inconsistencies in her statements
and testimony is a failure to read them. Trial counsel was clearly aware of the first
statement given to Deputy Davidson as he questioned C.A. on her failure to inform the
deputy that she knew Ramos and had smoked dope with him on prior occasions. The
variation between the statement given to Investigator Torres and C.A.'s trial testimony is
the former's inclusion that Ramos put her legs over his shoulders. We disagree with
appellate counsel, but refrain from graphic explanation, that this negates her testimony his
whole body was on hers. In her testimony on direct examination, C.A. did not detail the
physical orientation of herself and Ramos during the assault and was cross-examined on
the position of her hands as they related to the possibility of fending off Ramos. Appellate
counsel contends there was "[n]o sound strategic choice to disregard the previous
statements" but we find one possible motive - to keep them from being entered into
evidence during the guilt/innocence phase of the trial. Accordingly, we cannot say trial
counsel's action could not be considered as part of an overall strategic plan. See Tong v.
State, 25 S.W.3d 707, 713-14 (Tex. Crim. App. 2000). 

 Second, appellate counsel claims trial counsel elicited a confession from Ramos.
When Ramos took the stand, Jimmy Pace had already testified that Ramos told him that
he (Ramos) had sex with C.A. and "she said no and he didn't stop after saying no." Pace
said C.A. "repeatedly" said no in his statement to the sheriff's office. Ramos admitted
that C.A. said no, but placed it in the context of not right then, later. Ramos further
testified as to C.A.'s actions which indicated the encounter was consensual and to prior
acts, to explain why he continued despite C.A.'s words. In light of Pace's testimony
supporting C.A.'s version of events, trial counsel's examination of Ramos fell within the
wide range of reasonable professional assistance.

 Third, appellate counsel complains trial counsel failed to object to the testimony of
C.A.'s husband, L.A. It is apparent trial counsel was attempting to show the ongoing
relationship, and all that it entailed, between Ramos, C.A. and L.A. While much of the
testimony involves illegal and immoral behavior, the credibility and character of C.A. and
L.A., as well as Ramos, were assailed. Further, the testimony raised the possibility that
L.A. and C.A. had a motive to retaliate against Ramos. Consequently, trial counsel's
failure to object to L.A.'s testimony could have been trial strategy.

 Fourth, appellate counsel asserts trial counsel should have objected to evidence
regarding Ramos' national origin and ethnicity. It is apparent the evidence was admitted
in light of the association between Ramos and L.A. and trial counsel's attempt to suggest
a motive for L.A. to provide false testimony, as well as intimate L.A.'s racial bias against
Ramos.

 Fifth, appellate counsel contends trial counsel introduced evidence for no valid
purpose. The complained-of evidence was evidently introduced to attack the credibility
of L.A. and C.A., as well as provide an ulterior motive for their testimony. Appellate
counsel's disagreement with trial counsel's strategy does not render it unacceptable.

 Sixth, appellate counsel complains trial counsel failed to file any pre-trial motions. 
Considering trial counsel's strategy to discredit L.A. and C.A. with the evidence which
would have been the subject of such motions, we cannot say his omission was deficient.

 Lastly, appellate counsel argues trial counsel's premature closing created bias with
the trial judge. We have reviewed the trial judge's comments and find no evidence of any
bias. To the contrary, the trial judge commended trial counsel for proceeding to trial as
scheduled without seeking a delay and for that reason permitted him to reopen the defense.

 Ordinarily, the presumption of reasonable effectiveness cannot be overcome absent
evidence in the record of the attorney's reasons for his conduct. See Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). In this appeal, we have no record, usually
developed in a motion for new trial hearing or on writ of habeas corpus, explaining
counsel's thought processes and trial strategy. (1) In the absence of an evidentiary hearing
in which counsel is called upon to explain his actions, we must presume that, under the
circumstances, the challenged action might be simply considered to be part of an overall
strategic plan. See Tong, 25 S.W.3d at 713-14. See also Redmond v. State, 30 S.W.3d
692, 699 (Tex. App.--Beaumont 2000, pet. ref'd). Issue one is overruled.

 Issue two argues Ramos also received ineffective assistance during the punishment
phase when trial counsel:


 Adopted a punitive stance on direct, conceding his guilt;
 Introduced no mitigating evidence;
 Failed to object to the inclusion of appellant's polygraph results in the P.S.I. report;
and
 Made no argument in behalf of appellant.


 We disagree with appellate counsel's characterization of trial counsel's attitude
during sentencing. The testimony elicited from Ramos was clearly designed to elicit
sympathy and portray him as desirous of reform. 

 The record does not reflect any mitigating evidence existed. We cannot assume trial
counsel could have presented any such evidence. 

 The results of Ramos' polygraph contained in the PSI report reflect the opinion of
the examiner that Ramos was being deceptive on two questions concerning whether C.A.
told him to stop. We fail to see how this information could have had a negative impact on
sentencing as Ramos had already admitted during guilt/innocence that C.A. said no.

 We do not find it significant that trial counsel made no argument at the close of
testimony since neither did the State. Further, because Ramos' conviction for the second
degree felony offense of sexual assault was enhanced to a first degree felony with a prior
felony conviction, to which he pleaded true, the range of punishment was five to ninety-nine years or life. The trial court's sentence of ten years does not, by itself, indicate trial
counsel was ineffective. Issue two is overruled. The judgment of the trial court is
AFFIRMED.

 PER CURIAM


Submitted on May 22, 2003

Opinion Delivered June 11, 2003

Do not publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

1. We recognize appellate counsel attempted to develop such a record in the trial court
but no ruling was secured and we are not presented with a complaint on appeal regarding
defendant's motion to abate.