COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-363-CR

VICENTE HERNANDEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Vicente Hernandez appeals his conviction of engaging in organized criminal activity by committing aggravated assault while using or exhibiting a deadly weapon.  In two points, appellant argues that (1) the evidence was legally insufficient to sustain the conviction, and (2) he was denied effective assistance of counsel when his trial attorney failed to file a timely election to have the jury assess punishment in light of his request that he be granted community supervision.  We affirm.

Background Facts

At about 10:00 p.m. on October 30, 2004, members of two rival gangs were smoking marijuana at appellant’s residence on Chicago Street in Tarrant County.  Twenty-five-year-old appellant was allegedly a member of the gang Eastside Trece.
(footnote: 2)  Appellant’s friend Marcus, who was at appellant’s house that day, was a known member of Eastside Trece.  Fourteen-year-old victim Ray Cabrera was a member of the gang Fantasmas.  Seventeen-year-old Ebarado Rodriguez was also a member of Fantasmas.  A fight broke out between appellant and Ebarado, and appellant grabbed Ebarado’s ear, ripping his earring off.  
Ebarado and Cabrera decided to leave and got a ride to Ebarado’s brother’s house from Albert Mendoza.  Ebarado’s brother, Ruben Rodriguez, a former member of Fantasmas, lived a few blocks away in the same neighborhood. Ruben awoke and found Ebarado crying and bleeding. 

Ruben, Ebarado, and Cabrera then got in Ruben’s red and white Blazer and decided to return to appellant’s house.  Ruben testified that he went to appellant’s house to talk to him about why he hit Ebarado, but he was prepared to fight if necessary.  Neither Ruben, Ebarado, nor Cabrera took any weapons or guns.  As they turned onto appellant’s street, Ruben, Ebarado, and Cabrera saw people scattering and hiding behind trees and the mailbox, and then gunfire erupted.  Several bullets hit Ruben’s Blazer; Ruben put the Blazer in reverse to escape the gunfire, but Cabrera was shot in the head.  Ruben found police arresting someone at a Carnival grocery store nearby, so he pulled into the store to get help and told them what had happened.

Fort Worth Police Officer Jim Grow arrived at the Carnival grocery store and spoke with Ruben and Ebarado.  Officer Grow was assigned to the gang enforcement unit.  He testified that Cabrera had already been taken to the hospital when he arrived at the store.
(footnote: 3)
 Officer Grow testified that the Blazer had multiple bullet holes in the back rear window area and bullet holes in the front bumper.  He did not find any weapons in the vehicle.  After the Blazer was towed, Officer Grow went to appellant’s house.  Upon entering the home, he found items indicative of gang membership in appellant’s bedroom.  For example, the walls were covered with Eastside writing and graffiti in what appeared to be a blue magic marker.  The phrase “FUCC the world” was written on the wall.  Officer Grow testified that different street gangs drop or replace letters when a rival gang utilizes that letter within their title or to indicate a possible alliance with another street gang, such as the Crips.  In addition, the police identified the signs, phrases, and markings on the wall as symbols commonly identified with street gangs. 

The desk/entertainment center in appellant’s bedroom had various types of ammunition on it.  Police also found magazine clips and a holster in the dresser drawers.  Further, they found a piece of paper with a scribbled “ES” symbol attached to the wall.  Officer Grow identified the symbol as one commonly used by Eastside Trece members and matched the symbol to the “ES” tattooed on appellant’s back.  Above the “ES” tattoo on appellant’s back was another tattoo that said, ”FUCC the world.”  From the closet of appellant’s room, police accessed a crawl space underneath the house where they found a .9 millimeter pistol and an SKS rifle.

Officer Grow was also present when another officer searched appellant and found a single .9 millimeter live round made out of aluminum in his pocket. Officer Grow testified that .9 millimeter casings made out of aluminum were also found outside appellant’s house on the ground.  Police did not find any bullet holes in the house, nor did they find any shell casings in the street or in the Blazer.  Ron Van Fleet, a firearms and toolmark examiner with the Fort Worth Police Department Crime Lab, testified at trial that the .9 millimeter gun found in the crawl space in appellant’s room was the same gun that fired the ammunition that ejected some of the casings found by the curb in front of appellant’s home.  Fleet also testified that some of the ammunition found in appellant’s room, including the magazine clips, matched the .9 millimeter weapon. 

The State charged appellant with engaging in organized criminal activity by committing aggravated assault while using or exhibiting a deadly weapon. At trial, appellant testified that he acted in self-defense and defense of others in shooting at the Blazer.  At the time of the shooting, appellant lived with his mother and three younger siblings.  The house had three bedrooms, one for his mother and sister, one for his two younger brothers, and one for him. 

Appellant testified that on the night of October 30, 2004, he heard Ebarado arguing with someone outside, and he went to see what was going on. He told Ebarado and his group to leave, but Ebarado punched him, so he had to defend himself.  A few minutes after Ebarado left, Mendoza, the person who gave Ebarado and Cabrera a ride to Ruben’s house, returned and told appellant that Ebarado and Ruben were coming back.  Appellant testified that he believed that they were going to come back and shoot at him and do something to his family, so he went inside and grabbed his gun.  He testified that when he came back outside, the occupants of the Blazer and two other cars were shooting at his house.  Appellant testified that he shot back to protect his family.  Appellant’s friend, Marcus, a known Eastside Trece member who had been hanging out with appellant that day, also began shooting at the Blazer. 

Appellant also testified that he had been a member of Eastside Trece when he was younger but that he stopped being in a gang in 2000 because his new girlfriend did not want him to be involved with “that crowd.”  Appellant got his “ES” tattoo in his early teens when he was in the gang.  He also testified that the gang stuff in his room was done a long time ago, but he had never painted over it.

On October 4, 2006, a jury convicted appellant for the felony offense of engaging in organized criminal activity and also made an affirmative deadly weapon finding.  The trial court sentenced appellant to forty years’ confinement.  Appellant did not file a motion for new trial.

Sufficiency of the Evidence

In his first point, appellant argues that the evidence is legally insufficient to sustain the conviction of engaging in organized criminal activity.

Standard of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Clayton v. State
, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Clayton
, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  Instead, we “determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.”  
Hooper v. State
, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.  
Jackson
, 443 U.S. at 326, 99 S. Ct. at 2793; 
Clayton
, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Bowden v. State
, 166 S.W.3d 466, 470 (Tex. App.—Fort Worth 2005, pet. ref’d).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar v. State
, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); 
Malik, 
953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry v. State
, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Applicable law and analysis

A person commits the offense of engaging in organized criminal activity if, “with the intent to establish, maintain, or participate . . . as a member of a criminal street gang,” he commits or conspires to commit one or more specified offenses, here, aggravated assault. 
 Tex. Penal Code Ann.
 § 71.02(a)(1) (Vernon Supp. 2007).  The Texas Penal Code defines “criminal street gang” as “three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.”  
Id. 
§ 71.01(d) (Vernon 2003).

Under the plain language of section 71.02(a), a defendant is guilty of engaging in organized criminal activity when the State proves the first element—that the defendant committed a specific offense that is listed under that chapter, such as aggravated assault—and the second element, that the defendant committed that offense “with the intent to establish, maintain, or participate . . . as a member of a criminal street gang.”  
Id. 
§ 71.02(a)
; Curiel v. State, 
No. 01-05-00724-CR, 2007 WL 1119887, at *3 (Tex. App.—Houston [1st Dist.] Apr. 12, 2007, pet. ref’d).  Appellant’s sufficiency of the evidence argument challenges the second element only; he does not challenge the proof relating to his commission of the underlying offense of aggravated assault.

The evidence shows that the shooting on October 30, 2004, was the result of a dispute between two rival gangs.  Appellant and Marcus were members of Eastside Trece while Cabrera, Ebarado, and Ruben were members or former members of Fantasmas.  That night someone taunted Ebarado that appellant had “whooped” one of Ebarado’s older brothers and also repeatedly said “f--- FMS.”  Ebarado then asked, “Why [are] you disrespecting my set?” Appellant told Ebarado, “This is my block, this is how I run this shit.”  Appellant and Ebarado then got into an altercation, and appellant grabbed Ebarado’s ear and ripped his earring off.  Cabrera and Ebarado testified that when they returned to the house with Ruben, they saw appellant hiding behind the mailbox with a weapon. 

Officer Grow of the gang enforcement unit of the Fort Worth Police Department testified that both gangs, Eastside Trece and Fantasmas, are composed of three or more members.  He also testified that both gangs continuously and regularly associate in criminal activity.  Eastside Trece’s criminal activities include crimes of violence, burglaries, and auto thefts.  Fantasmas’s criminal activities include similar crimes as well as narcotic activity.  Officer Grow also testified that an “ES” or a Roman numeral thirteen tattoo are associated with the Eastside Trece gang.  He also stated that some street gangs replace letters to indicate alliances with other gangs.  For example, the phrase “FUCC the world” indicates a possible alliance with the Crips street gang.  Additionally, blue is Eastside Trece’s primary color.  Here, appellant’s bedroom walls were covered with gang-related symbols and phrases.  “FUCC the world” and “ES” were written in several places in blue.  In addition, appellant had an “ES” tattoo on his back with a “FUCC the world” tattoo above it.  

Police also found many rounds of ammunition and  magazine clips on the desk in appellant’s room; they also found a hidden crawl space with a .9 millimeter pistol and an SKS rifle.  Firearms and toolmark examiner Fleet testified that the ammunition found in appellant’s bedroom matched the casings found outside the house.  Furthermore, no weapons were found in Ruben’s Blazer, and no bullet holes or broken windows were found in appellant’s house to substantiate his claim that someone had opened fire on his house. 

Additionally, Ebarado testified that appellant was a member of Eastside Trece.  Appellant admitted that he was a former member of Eastside Trece, but that he got out of the gang in 2000 because his girlfriend did not like it.  Appellant, however, admitted that he still knew gang members and had been hanging out with Eastside Trece gang member Marcus all day.  The original fight between appellant and Ebarado resulted from their association with rival gangs.  Furthermore, Fort Worth Detective Francisco Serra III testified that when he arrived at appellant’s house on October 30, 2004, appellant told him that there had been an argument over “gang stuff.” 

In this case, the jury was entitled to disbelieve appellant’s testimony that he was no longer a member of Eastside Trece; it seems clear that the jury did not believe him.  
See Margraves, 
34 S.W.3d at 919; 
see also Roy v. State, 
997 S.W.2d 863, 868 (Tex. App.—Fort Worth 1999, pet. ref’d)
.  In sum, appellant had gang-symbol tattoos on his back; gang-related graffiti, guns, and a large amount of ammunition in his bedroom; and he associated with members of Eastside Trece.  Furthermore, Ebarado, although a rival gang member, testified that appellant was a member of Eastside Trece at the time of the shooting. 

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that appellant committed the underlying aggravated assault with the intent to participate as a member of the criminal street gang, Eastside Trece.  
Tex. Penal Code Ann.
 § 71.02(a);
 Roy, 
997 S.W.2d at 869. 
 We overrule appellant’s first point.

Ineffective Assistance of Counsel

In his second point, appellant contends that he was denied effective assistance of counsel because his trial attorney failed to inform him that the trial judge was precluded from granting community supervision if the jury found that he used or exhibited a deadly weapon during the commission of the crime.  Appellant argues that his trial counsel failed to file a timely election to have the jury assess punishment according to his application for a probated sentence, which asked the court to submit the application to the jury. 

Standard of review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that 
his 
counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Id.
, (quoting 
Thompson
, 9 S.W.3d at 813).  It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record.  
Mata v. State
, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Applicable law and analysis

Article 42.12, section 3 of the Texas Code of Criminal Procedure states that “[a] 
judge
 . . . may suspend the imposition of the sentence and place the defendant on community supervision.”  
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3 (Vernon Supp. 2007) (emphasis added); 
State v. Recer, 
815 S.W.2d 730, 731 (Tex. Crim. App. 1991).  Section 3g(a)(2) of that same article provides that the above provision does not apply “to a defendant when it is shown that a deadly weapon . . . was used or exhibited . . . during the commission of a felony offense.”  
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2); 
Recer, 
815 S.W.2d at 731.  Thus, when a judge is assessing punishment and article 3g(a)(2) applies, a defendant is ineligible for community supervision.  
Tex. Code Crim. Proc. Ann.
 art. 42.12, §§ 3g(a)(2), 4(a); 
Recer, 
815 S.W.2d at 731
.  Conversely, a jury may place a defendant on community supervision even if they make a deadly weapon finding.  
Tex. Code Crim. Proc. Ann.
 art. 42.12 § 4(a) (Vernon Supp. 2007).

The record reflects that on October 2, 2006, before voir dire, appellant filed an application for a probated sentence stating that he had never been convicted of a felony and asking the court to submit the application to the jury. On the same day, appellant filed a motion for the assessment of punishment requesting that the trial court assess punishment.  The trial court included in the jury charge a question regarding the deadly weapon, and the jury found that appellant used or exhibited a deadly weapon.  The trial court, after hearing evidence on punishment, sentenced appellant to forty years’ confinement. 

Appellant argues that trial counsel rendered ineffective assistance by failing to explain to him the consequences of unsuccessfully claiming self-defense at guilt-innocence because his testimony would result in a deadly weapon finding and thus prevent the trial court from considering community supervision.  Appellant argues that by allowing him to claim self-defense at guilt-innocence, but then electing to have the trial court assess punishment, his counsel rendered his decision to seek community supervision meaningless. 

To support a claim for ineffective assistance of counsel on the ground that counsel failed to elect punishment to the jury, there must be evidence that the defendant was initially eligible to receive probation, that counsel’s advice to go to the trial judge for sentencing was not given as part of a valid trial strategy, that the defendant’s decision to have the judge assess punishment was based on his attorney’s erroneous advice, and that the defendant’s decision would have been different if his attorney had correctly informed him of the law.  
Recer, 
815 S.W.2d at 731-32.  The election belongs to appellant, not his trial counsel, so counsel’s ineffectiveness would lie in not providing sufficient information to make an informed choice or in failing to properly execute appellant’s election.  
Redmond v. State, 
30 S.W.3d 692, 698 (Tex. App.—Beaumont 2000, pet. ref’d).  Appellant speculates that counsel may not have realized that a self-defense claim at guilt-innocence would preclude a judge-ordered community supervision because if the jury found that he did not act in self-defense, a deadly weapon finding was inevitable.  But the record does not indicate whether counsel mistakenly believed that appellant would be eligible for community supervision if he asked the judge to assess punishment. 

Without a hearing directly addressing this issue, we are unable to conclude that counsel’s performance was ineffective.  
Id.; See also Bone v. State,
 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); 
Kirk v. State,
 199 S.W.3d 467, 482 (Tex. App.—Fort Worth 2006, pet ref’d).
  
The record does not reflect whether appellant elected to have the trial judge assess punishment because of his attorney’s influence or advice.  Further, it does not reflect whether the decision to have the trial judge assess punishment was a valid tactical decision by trial counsel, nor does it reflect that appellant’s sentencing election would have been different had he been informed of the legal impact of a deadly weapon affirmative finding.  Thus, we hold that appellant has not brought forward a record upon which we can determine that he received ineffective assistance of counsel.  
Bone
, 77 S.W.3d at 836; 
Kirk,
 199 S.W.3d at 481-82; 
Redmond, 
30 S.W.3d at 698.
  
We overrule his second point.

Conclusion

Having overruled both of appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  LIVINGSTON, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 7, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Because appellant’s sufficiency of the evidence challenge relates to whether the evidence was sufficient to establish he was a gang member, we will address that evidence later in the opinion.

3:
At trial, Cabrera was partially paralyzed on his left side, had impaired use of his hand, walked with a limp, and had trouble with his speech.  The bullet remained lodged in his brain.