COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROSSANA LACARBONARA, | § | |
| | | No. 08-13-00262-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 41st District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20090D02792) |
| | § | |

## **O P I N I O N**

Appellant Rossana LaCarbonara was indicted in 2009 for injury to a child causing serious bodily injury. She pleaded guilty and was placed on deferred-adjudication community supervision for ten years. Three years later, Appellant was involved in a car accident with her children while allegedly intoxicated. The State moved to revoke Appellant's community supervision and for an adjudication of guilt. After a hearing, the trial court found Appellant had violated the terms of her community supervision and revoked Appellant's community supervision. The trial court adjudicated Appellant guilty for the original offense and sentenced Appellant to twenty years' confinement.

On appeal, Appellant contends the trial court erred in failing to suppress incriminating statements she made to the police in the hospital emergency room following the car accident. Appellant asserts these statements were the product of a custodial interrogation and were

inadmissible because they were not recorded as required by Article 38.22 of the Texas Code of Criminal Procedure.[1]  We affirm.

## BACKGROUND

Near midnight on February 3, 2013, Appellant was involved in a single-vehicle accident along with another adult and four children, three of whom were unrestrained.  The youngest child was ejected from the vehicle when it rolled over.  El Paso police officer Jacob Stark and his partner were dispatched to the scene, where Officer Stark observed beer bottles throughout the vehicle.  In attempting to determine which adult was driving the vehicle, Officer Stark spoke with Appellant while she was in the ambulance strapped down to a backboard stretcher.  Officer Stark noted that Appellant's eyes were bloodshot and that he smelled a slight odor of alcohol.  Officer Stark testified, without objection, that Appellant admitted she was driving the vehicle.  A paramedic testified that while they were en route to the hospital, Appellant told him she had consumed two beers.  The paramedic also testified that after speaking with Appellant, he determined that Appellant was driving the vehicle.

About thirty minutes later, Officer Stark again made contact with Appellant at the hospital, where Appellant was in the emergency room with three of her children.  He observed again that her eyes were bloodshot and that she smelled of alcohol.  He also noted her speech was slurred. Officer Stark testified that when he asked what happened, Appellant told him she was driving westbound along the gateway when she attempted to exit the gateway.  At this point, counsel for Appellant objected and requested to take the witness on voir dire "as to his admonishments of the

---

[1] Article 38.22 provides that no oral statement of an accused is admissible against the accused in a criminal proceeding unless certain requirements have been satisfied, including that the statement be recorded and that during the recording, the accused is given his *Miranda* rights and he knowingly, intelligently, and voluntarily waives those rights.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3 (West Supp. 2014).

2

defendant prior to making any statements to law enforcement." The trial court allowed the prosecutor to proceed with the questioning of Officer Stark to establish whether and when he gave any warnings.

Officer Stark testified that when he first made contact with Appellant in the hospital, she was not under arrest and not in custody and that he did not give Appellant any *Miranda* warnings until after he completed his accident investigation. When the prosecutor asked what Appellant had said at the hospital, counsel for Appellant objected based on improper foundation, arguing that the officer was required to give Appellant all the required warnings when he first talked to Appellant at the hospital, because at that time he clearly had probable cause or reasonable suspicion to suspect there was a DWI offense and injuries to a child. The trial court overruled the objection. Officer Stark then testified that Appellant told him:

> [S]he was traveling westbound along the gateway, not along I-10. She'd been confused by the construction on the freeway. … She attempted to exit the gateway, making a right, causing the accident. She said she struck the curb and that's when the accident had [sic] – she lost control of the vehicle.

Officer Stark did not ask Appellant any additional questions. Rather, he consulted with his partner, and they decided to take Appellant into custody and charge her with DWI with children under the age of 15. Officer Stark then arrested Appellant and read her rights to her. A blood sample was then taken from Appellant, which when analyzed showed a 0.11 blood alcohol level.

On cross-examination, Officer Stark testified that Appellant had already been released from the backboard and was sitting up in bed when he questioned her in the emergency room. Defense counsel asked a series of hypothetical questions about what the officer would have done if Appellant had attempted to leave. Officer Stark initially stated that if Appellant had "gotten up to walk off," he would have let her go. He then testified he "would have asked her to stand by so I

3

could talk to her about the accident … just to conduct my investigation … [because] I needed to know what happened at the accident[.]"  He then admitted that he wasn't "just going to let her walk away at that point," but he was going to "conduct my investigation."  Officer Stark stated that he understood that once he made an arrest, a suspect was entitled to their rights, and that he had been trained to obtain a suspect's statement before making an arrest.  He ultimately testified that he wanted "to get a statement from" Appellant and that "she's not free to leave until she answers [my] questions."

Counsel for Appellant renewed his objection to introduction of Appellant's statements because "[c]learly, there was some custodial interrogation going on," since Officer Stark had testified Appellant was not free to leave and that he would have detained her to ask questions. The trial court overruled this renewed objection.

## DISCUSSION

### Standard of Review

We review a trial court's ruling refusing to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).[2]  In reviewing the trial court's decision, we view the evidence in the light most favorable to the trial court's ruling.  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo.  *Alford v. State*, 358 S.W.3d 647, 652 (Tex.Crim.App.

---

[2] While Appellant challenged the evidence during the hearing and not in a pre-hearing motion to suppress, we have previously concluded that the same standard of review should be applied to suppression issues litigated during trial as is applied to a pretrial motion to suppress.  *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 702 n.3 (Tex.App. – El Paso 2009, no pet.).  In any event, a trial court's decision regarding the admissibility of evidence is also reviewed under an abuse of discretion standard.  *Cameron v. State,* 241 S.W.3d 15, 19 (Tex.Crim.App. 2007); *see also Jean v. State*, No. AP-76,601, 2013 WL 3282956, at *3 (Tex.Crim.App. June 26, 2013), *cert. denied*, 134 S.Ct. 1008 (2014).  We uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement.  *Cameron,* 241 S.W.3d at 19; *Jean*, 2013 WL 3282956, at *3.

4

2012). Likewise, we give almost total deference to a trial court's resolution of mixed questions of law and fact if those questions turn on the credibility and demeanor of witnesses. *Id*. However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id*.; *Young v. State*, 283 S.W.3d 854, 873 (Tex.Crim.App. 2009). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418.

*Custodial Interrogation*

The issue is whether Appellant's interview amounted to a custodial interrogation. *Miranda* requires that the accused be properly admonished of certain constitutional rights in order for his statements "stemming from custodial interrogation" to be admissible as evidence against him. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Likewise, all the requirements of Article 38.22, including the requirement that an oral statement be recorded, apply only to statements of an accused "made as a result of custodial interrogation." TEX.CODE CRIM.PROC. ANN. art. 38.22, §§ 2(a), 3(a)(2). Article 38.22 specifically provides that it does not preclude the admission of statements that do not stem from custodial interrogation. *Id*. at § 5.

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *see Bass v. State*, 723 S.W.2d 687, 690-91 (Tex.Crim.App. 1986) ("custodial interrogation" as used in Article 38.22 was intended to be construed consistently with its meaning under the Fifth Amendment of the United States Constitution).

5

To determine whether an individual is in custody, a court must first examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). This determination of custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323. After the circumstances surrounding the interrogation are considered, the court must determine whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995); *see also Herrera v. State*, 241 S.W.3d 520, 525 (Tex.Crim.App. 2007).

The Court of Criminal Appeals has identified four general situations that may constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way;
>
> (2) when a law enforcement officer tells the suspect that he cannot leave;
>
> (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and
>
> (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt*, 931 S.W.2d at 255. The determination of custody is made on an ad hoc basis after considering all of the objective circumstances. *Id.* The defendant bears the burden to prove a

6

statement was the product of a custodial interrogation. *Herrera*, 241 S.W.3d at 526.

*Analysis*

Appellant contends that because she was questioned while lying injured in a hospital bed in the emergency room, she was in custody because a reasonable person would conclude they were not free to leave and were in fact under arrest.

It is well-established, however, that police questioning of a defendant while they are being treated at a hospital, without more, does not automatically rise to the level of a custodial interrogation. *See Guerrero v. State,* 605 S.W.2d 262, 265 (Tex.Crim.App. 1980) (there was no custodial interrogation when an officer asked persons in an emergency room whether they were driving a car involved in the accident); *see also Newsome v. State,* No. 02-07-00273-CR, 2008 WL 4938096, at *4 (Tex.App. – Fort Worth Nov. 20, 2008, pet. ref'd) (memo op., not designated for publication) (defendant's statements were not a result of a custodial interrogation when he was questioned at the hospital after a gun-shot wound); *Yarborough v. State,* 178 S.W.3d 895, 899–902 (Tex.App. – Texarkana 2005, pet. ref'd) (defendant's statements were not the product of a custodial interrogation when his movements were restrained only to the extent he was receiving medical treatment for his stab wounds); *Redmond v. State,* 30 S.W.3d 692, 696–97 (Tex.App. – Beaumont 2000, pet. ref'd) (there was no custodial interrogation when officer asked defendant, who was strapped into a gurney in an ambulance with two broken legs, what had happened); *Vessels v. State,* 938 S.W.2d 485, 486, 488 (Tex.App. – El Paso 1996, no pet.) (defendant's statements did not result from a custodial interrogation when he was questioned while in the hospital for treatment of a gun-shot wound).

7

The hospital cases relied on by Appellant do not support her position. First, all of these cases concern when a defendant is under arrest for purposes of implied consent to a blood alcohol test; but, more important, in all three cited cases, the defendants were considered in custody and under arrest because, unlike Appellant, they had been informed by law enforcement they were under arrest. *Nottingham v. State*, 908 S.W.2d 585, 588 (Tex.App. – Austin 1995, no pet.) (defendant, who was interviewed by police officer in hospital emergency room following car accident, was considered under arrest after the officer read defendant the DIC-24 warnings informing defendant she was under arrest, because at that point "a reasonable person in appellant's position would believe that she was not free to leave"); *Bell v. State*, 881 S.W.2d 794, 799 (Tex.App. – Houston [14th Dist.] 1994, pet. ref'd) (defendant was in custody because a "reasonable person, injured and lying on a hospital stretcher, hearing from a police officer the words 'you are under arrest' and 'placed under arrest,' could conclude that he was not free to leave"); *State v. Williams,* 814 S.W.2d 256, 258-60 (Tex.App. – Austin 1991) (fact that police read defendant the DIC-24 warnings in the hospital emergency room supported the trial court's implied finding the defendant was under arrest even though the officer testified defendant was only being investigated), *aff'd,* 832 S.W.2d 52 (Tex.Crim.App. 1992).

In contrast, in the present case, Appellant presented no evidence that, prior to her statements, Officer Stark or his partner informed her she was in custody, under arrest, or that she was not free to leave. Appellant's situation is most similar to the appellant's in *Hull v. State*, No. 01-11-01087-CR, 2013 WL 772950 (Tex.App. – Houston [1st Dist.] Feb. 28, 2013, pet. ref'd)(memo op., not designated for publication). Hull appealed his conviction for intoxication manslaughter contending the trial court erred in denying his motion to suppress incriminating

statements he made to a deputy sheriff while he was immobilized for emergency treatment in a hospital. *Id*. at *1. When the deputy approached Hull, he was in a hospital bed on a backboard, with a C-collar around his neck, and suffering from lower leg injuries. *Id*. at *2. At that point neither the deputy nor any other law enforcement officer had informed Hull that he was under arrest. *Id*. Hull contended that because he was immobilized at the hospital, the interrogation was custodial and he had not been properly advised of his rights before making the statement. *Id*. at *3. The court of appeals held Hull was not in custody at the time he gave his statement, noting that in general simply being the focus of a criminal investigation does not amount to being in custody, and in particular detention and questioning by a police officer during a DWI investigation, without more, is not custody. *Id*. The court distinguished *Bell v. State* and another case because in both cases the defendants were not only confined to a hospital bed but also had been informed by the officer that they were under arrest. *Id*. at *4. Similarly, in the present case, Appellant has shown only that she was questioned in the emergency room, and has not provided any evidence that at the time she made her statement to Officer Stark, she had been informed she was under arrest or that she could not leave.

Further, Appellant's reliance on Officer Stark's testimony that he would not have allowed Appellant to leave until she answered his questions, is also misplaced. Officer Stark's subjective intent is irrelevant. The subjective intent of law enforcement to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Stansbury,* 511 U.S. at 325–26; *Dowthitt,* 931 S.W.2d at 254; *Vessels v. State*, 938 S.W.2d 485, 488 (Tex.App. – El Paso 1996, no pet.). Appellant presented no evidence that Officer Stark or his partner communicated or manifested to her that she was not free to leave until she answered their questions.

9

There is nothing in the record before us that in any way shows that the Appellant was in police custody when she made any of her oral statements. There is no evidence that she was restrained, that she was told not to leave, or that she was under arrest. The "reasonable person" standard presupposes an innocent person. *Dowthitt,* 931 S.W.2d at 254 (citing *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)). A reasonable innocent person might expect to be questioned by police after being involved in a rollover accident resulting in injuries to herself and others. We conclude that none of Appellant's oral statements were the result of a custodial interrogation. Accordingly, the admissibility requirements of Article 38.22 did not apply, and the trial court did not abuse its discretion in admitting and considering Appellant's statements. We overrule Appellant's sole issue on appeal.

## CONCLUSION

The trial court's judgment is affirmed. The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that she was informed of her rights to appeal and file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of her right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX.R.APP.P. 48.4.

STEVEN L. HUGHES, Justice

May 20, 2015

10

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)