COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-363-CR

 

 

VICENTE HERNANDEZ                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Introduction








Appellant Vicente Hernandez
appeals his conviction of engaging in organized criminal activity by committing
aggravated assault while using or exhibiting a deadly weapon.  In two points, appellant argues that (1) the
evidence was legally insufficient to sustain the conviction, and (2) he was
denied effective assistance of counsel when his trial attorney failed to file a
timely election to have the jury assess punishment in light of his request that
he be granted community supervision.  We
affirm.

Background Facts

At about 10:00 p.m. on
October 30, 2004, members of two rival gangs were smoking marijuana at
appellant=s residence
on Chicago Street in Tarrant County. 
Twenty-five-year-old appellant was allegedly a member of the gang
Eastside Trece.[2]  Appellant=s friend Marcus, who was at appellant=s house that day, was a known member of Eastside Trece.  Fourteen-year-old victim Ray Cabrera was a
member of the gang Fantasmas. 
Seventeen-year-old Ebarado Rodriguez was also a member of Fantasmas.  A fight broke out between appellant and
Ebarado, and appellant grabbed Ebarado=s ear, ripping his earring off. 
Ebarado and Cabrera decided to leave and got a ride to Ebarado=s brother=s house from
Albert Mendoza.  Ebarado=s brother, Ruben Rodriguez, a former member of Fantasmas, lived a few
blocks away in the same neighborhood. Ruben awoke and found Ebarado crying and
bleeding. 








Ruben, Ebarado, and Cabrera
then got in Ruben=s red and
white Blazer and decided to return to appellant=s house.  Ruben testified that
he went to appellant=s house to
talk to him about why he hit Ebarado, but he was prepared to fight if
necessary.  Neither Ruben, Ebarado, nor
Cabrera took any weapons or guns.  As
they turned onto appellant=s street, Ruben, Ebarado, and Cabrera saw people scattering and hiding
behind trees and the mailbox, and then gunfire erupted.  Several bullets hit Ruben=s Blazer; Ruben put the Blazer in reverse to escape the gunfire, but
Cabrera was shot in the head.  Ruben
found police arresting someone at a Carnival grocery store nearby, so he pulled
into the store to get help and told them what had happened.

Fort Worth Police Officer Jim
Grow arrived at the Carnival grocery store and spoke with Ruben and
Ebarado.  Officer Grow was assigned to
the gang enforcement unit.  He testified
that Cabrera had already been taken to the hospital when he arrived at the
store.[3]








Officer Grow testified that
the Blazer had multiple bullet holes in the back rear window area and bullet
holes in the front bumper.  He did not
find any weapons in the vehicle.  After
the Blazer was towed, Officer Grow went to appellant=s house.  Upon entering the
home, he found items indicative of gang membership in appellant=s bedroom.  For example, the
walls were covered with Eastside writing and graffiti in what appeared to be a
blue magic marker.  The phrase AFUCC the world@ was written
on the wall.  Officer Grow testified that
different street gangs drop or replace letters when a rival gang utilizes that
letter within their title or to indicate a possible alliance with another
street gang, such as the Crips.  In
addition, the police identified the signs, phrases, and markings on the wall as
symbols commonly identified with street gangs. 

The desk/entertainment center
in appellant=s bedroom
had various types of ammunition on it. 
Police also found magazine clips and a holster in the dresser
drawers.  Further, they found a piece of
paper with a scribbled AES@ symbol attached to the wall. 
Officer Grow identified the symbol as one commonly used by Eastside
Trece members and matched the symbol to the AES@ tattooed on
appellant=s back.  Above the AES@ tattoo on
appellant=s back was
another tattoo that said, @FUCC the world.@  From the closet of appellant=s room, police accessed a crawl space underneath the house where they
found a .9 millimeter pistol and an SKS rifle.








Officer Grow was also present
when another officer searched appellant and found a single .9 millimeter live
round made out of aluminum in his pocket. Officer Grow testified that .9
millimeter casings made out of aluminum were also found outside appellant=s house on the ground.  Police
did not find any bullet holes in the house, nor did they find any shell casings
in the street or in the Blazer.  Ron Van
Fleet, a firearms and toolmark examiner with the Fort Worth Police Department
Crime Lab, testified at trial that the .9 millimeter gun found in the crawl
space in appellant=s room was
the same gun that fired the ammunition that ejected some of the casings found
by the curb in front of appellant=s home.  Fleet also testified that
some of the ammunition found in appellant=s room, including the magazine clips, matched the .9 millimeter
weapon. 

The State charged appellant
with engaging in organized criminal activity by committing aggravated assault
while using or exhibiting a deadly weapon. At trial, appellant testified that
he acted in self-defense and defense of others in shooting at the Blazer.  At the time of the shooting, appellant lived
with his mother and three younger siblings. 
The house had three bedrooms, one for his mother and sister, one for his
two younger brothers, and one for him. 








Appellant testified that on
the night of October 30, 2004, he heard Ebarado arguing with someone outside,
and he went to see what was going on. He told Ebarado and his group to leave,
but Ebarado punched him, so he had to defend himself.  A few minutes after Ebarado left, Mendoza,
the person who gave Ebarado and Cabrera a ride to Ruben=s house, returned and told appellant that Ebarado and Ruben were
coming back.  Appellant testified that he
believed that they were going to come back and shoot at him and do something to
his family, so he went inside and grabbed his gun.  He testified that when he came back outside,
the occupants of the Blazer and two other cars were shooting at his house.  Appellant testified that he shot back to
protect his family.  Appellant=s friend, Marcus, a known Eastside Trece member who had been hanging
out with appellant that day, also began shooting at the Blazer. 

Appellant also testified that
he had been a member of Eastside Trece when he was younger but that he stopped
being in a gang in 2000 because his new girlfriend did not want him to be
involved with Athat crowd.@  Appellant got his AES@ tattoo in
his early teens when he was in the gang. 
He also testified that the gang stuff in his room was done a long time
ago, but he had never painted over it.

On October 4, 2006, a jury
convicted appellant for the felony offense of engaging in organized criminal
activity and also made an affirmative deadly weapon finding.  The trial court sentenced appellant to forty
years= confinement.  Appellant did not
file a motion for new trial.

Sufficiency of the Evidence

In his first point, appellant
argues that the evidence is legally insufficient to sustain the conviction of
engaging in organized criminal activity.

 

 








Standard of review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16-17 (Tex. Crim. App. 2007). 
We must presume that the fact-finder resolved any conflicting inferences
in favor of the prosecution and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.

The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.  The law as
authorized by the indictment means the statutory elements of the charged
offense as modified by the charging instrument. 
See Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Applicable law and analysis








A person commits the offense
of engaging in organized criminal activity if, Awith the intent to establish, maintain, or participate . . . as a
member of a criminal street gang,@ he commits or conspires to commit one or more specified offenses,
here, aggravated assault.  Tex. Penal Code Ann. ' 71.02(a)(1) (Vernon Supp. 2007). 
The Texas Penal Code defines Acriminal street gang@ as Athree or
more persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities.@  Id. ' 71.01(d) (Vernon 2003).

Under the plain language of
section 71.02(a), a defendant is guilty of engaging in organized criminal
activity when the State proves the first elementCthat the defendant committed a specific offense that is listed under
that chapter, such as aggravated assaultCand the second element, that the defendant committed that offense Awith the intent to establish, maintain, or participate . . . as a
member of a criminal street gang.@  Id. ' 71.02(a); Curiel v. State, No. 01-05-00724-CR, 2007 WL
1119887, at *3 (Tex. App.CHouston [1st
Dist.] Apr. 12, 2007, pet. ref=d).  Appellant=s sufficiency of the evidence argument challenges the second element
only; he does not challenge the proof relating to his commission of the
underlying offense of aggravated assault.








The evidence shows that the
shooting on October 30, 2004, was the result of a dispute between two rival
gangs.  Appellant and Marcus were members
of Eastside Trece while Cabrera, Ebarado, and Ruben were members or former
members of Fantasmas.  That night someone
taunted Ebarado that appellant had Awhooped@ one of
Ebarado=s older brothers and also repeatedly said Af--- FMS.@  Ebarado then asked, AWhy [are] you disrespecting my set?@ Appellant told Ebarado, AThis is my block, this is how I run this shit.@  Appellant and Ebarado then got
into an altercation, and appellant grabbed Ebarado=s ear and ripped his earring off. 
Cabrera and Ebarado testified that when they returned to the house with
Ruben, they saw appellant hiding behind the mailbox with a weapon. 

Officer Grow of the gang
enforcement unit of the Fort Worth Police Department testified that both gangs,
Eastside Trece and Fantasmas, are composed of three or more members.  He also testified that both gangs
continuously and regularly associate in criminal activity.  Eastside Trece=s criminal activities include crimes of violence, burglaries, and auto
thefts.  Fantasmas=s criminal activities include similar crimes as well as narcotic
activity.  Officer Grow also testified
that an AES@ or a Roman
numeral thirteen tattoo are associated with the Eastside Trece gang.  He also stated that some street gangs replace
letters to indicate alliances with other gangs. 
For example, the phrase AFUCC the world@ indicates a
possible alliance with the Crips street gang. 
Additionally, blue is Eastside Trece=s primary color.  Here,
appellant=s bedroom
walls were covered with gang-related symbols and phrases.  AFUCC the world@ and AES@ were
written in several places in blue.  In
addition, appellant had an AES@ tattoo on
his back with a AFUCC the
world@ tattoo above it.  








Police also found many rounds
of ammunition and  magazine clips on the
desk in appellant=s room; they
also found a hidden crawl space with a .9 millimeter pistol and an SKS
rifle.  Firearms and toolmark examiner
Fleet testified that the ammunition found in appellant=s bedroom matched the casings found outside the house.  Furthermore, no weapons were found in Ruben=s Blazer, and no bullet holes or broken windows were found in
appellant=s house to
substantiate his claim that someone had opened fire on his house. 

Additionally, Ebarado
testified that appellant was a member of Eastside Trece.  Appellant admitted that he was a former
member of Eastside Trece, but that he got out of the gang in 2000 because his
girlfriend did not like it.  Appellant,
however, admitted that he still knew gang members and had been hanging out with
Eastside Trece gang member Marcus all day. 
The original fight between appellant and Ebarado resulted from their
association with rival gangs. 
Furthermore, Fort Worth Detective Francisco Serra III testified that
when he arrived at appellant=s house on October 30, 2004, appellant told him that there had been an
argument over Agang stuff.@ 








In this case, the jury was
entitled to disbelieve appellant=s testimony that he was no longer a member of Eastside Trece; it seems
clear that the jury did not believe him. 
See Margraves, 34 S.W.3d at 919; see also Roy v. State, 997
S.W.2d 863, 868 (Tex. App.CFort Worth 1999, pet. ref=d).  In sum, appellant had
gang-symbol tattoos on his back; gang-related graffiti, guns, and a large
amount of ammunition in his bedroom; and he associated with members of Eastside
Trece.  Furthermore, Ebarado, although a
rival gang member, testified that appellant was a member of Eastside Trece at
the time of the shooting. 

Viewing this evidence in the
light most favorable to the verdict, we conclude that a rational trier of fact
could have determined beyond a reasonable doubt that appellant committed the
underlying aggravated assault with the intent to participate as a member of the
criminal street gang, Eastside Trece.  Tex. Penal Code Ann. ' 71.02(a); Roy, 997 S.W.2d at 869.  We overrule appellant=s first point.

Ineffective Assistance of
Counsel

In his second point,
appellant contends that he was denied effective assistance of counsel because
his trial attorney failed to inform him that the trial judge was precluded from
granting community supervision if the jury found that he used or exhibited a
deadly weapon during the commission of the crime.  Appellant argues that his trial counsel
failed to file a timely election to have the jury assess punishment according
to his application for a probated sentence, which asked the court to submit the
application to the jury. 

 

 








Standard of review

To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s representation
fell below the standard of prevailing professional norms and that there is a
reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.  Thompson,
9 S.W.3d at 813-14.  AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.@  Id., (quoting Thompson, 9
S.W.3d at 813).  It is not appropriate
for an appellate court to simply infer ineffective assistance based upon
unclear portions of the record.  Mata
v. State, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of Strickland
requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

 

 








Applicable law and analysis

Article 42.12, section 3 of
the Texas Code of Criminal Procedure states that A[a] judge . . . may suspend the imposition of the sentence and
place the defendant on community supervision.@  Tex. Code Crim. Proc. Ann. art. 42.12, ' 3 (Vernon Supp. 2007) (emphasis added); State v. Recer, 815
S.W.2d 730, 731 (Tex. Crim. App. 1991). 
Section 3g(a)(2) of that same article provides that the above provision
does not apply Ato a
defendant when it is shown that a deadly weapon . . . was used or exhibited . .
. during the commission of a felony offense.@  Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2); Recer, 815 S.W.2d at 731.  Thus, when a judge is assessing punishment
and article 3g(a)(2) applies, a defendant is ineligible for community
supervision.  Tex. Code Crim. Proc. Ann. art. 42.12, '' 3g(a)(2), 4(a); Recer, 815 S.W.2d at 731.  Conversely, a jury may place a defendant on
community supervision even if they make a deadly weapon finding.  Tex.
Code Crim. Proc. Ann. art. 42.12 ' 4(a) (Vernon Supp. 2007).








The record reflects that on
October 2, 2006, before voir dire, appellant filed an application for a
probated sentence stating that he had never been convicted of a felony and
asking the court to submit the application to the jury. On the same day, appellant
filed a motion for the assessment of punishment requesting that the trial court
assess punishment.  The trial court
included in the jury charge a question regarding the deadly weapon, and the
jury found that appellant used or exhibited a deadly weapon.  The trial court, after hearing evidence on
punishment, sentenced appellant to forty years= confinement. 

Appellant argues that trial
counsel rendered ineffective assistance by failing to explain to him the
consequences of unsuccessfully claiming self-defense at guilt-innocence because
his testimony would result in a deadly weapon finding and thus prevent the
trial court from considering community supervision.  Appellant argues that by allowing him to
claim self-defense at guilt-innocence, but then electing to have the trial
court assess punishment, his counsel rendered his decision to seek community
supervision meaningless. 








To support a claim for
ineffective assistance of counsel on the ground that counsel failed to elect
punishment to the jury, there must be evidence that the defendant was initially
eligible to receive probation, that counsel=s advice to go to the trial judge for sentencing was not given as part
of a valid trial strategy, that the defendant=s decision to have the judge assess punishment was based on his
attorney=s erroneous advice, and that the defendant=s decision would have been different if his attorney had correctly
informed him of the law.  Recer, 815
S.W.2d at 731-32.  The election belongs
to appellant, not his trial counsel, so counsel=s ineffectiveness would lie in not providing sufficient information to
make an informed choice or in failing to properly execute appellant=s election.  Redmond v.
State, 30 S.W.3d 692, 698 (Tex. App.CBeaumont 2000, pet. ref=d).  Appellant speculates that
counsel may not have realized that a self-defense claim at guilt-innocence
would preclude a judge-ordered community supervision because if the jury found
that he did not act in self-defense, a deadly weapon finding was
inevitable.  But the record does not
indicate whether counsel mistakenly believed that appellant would be eligible
for community supervision if he asked the judge to assess punishment. 

Without a hearing directly
addressing this issue, we are unable to conclude that counsel=s performance was ineffective.  Id.;
See also Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); Kirk
v. State, 199 S.W.3d 467, 482 (Tex. App.CFort Worth 2006, pet ref=d).  The record does not
reflect whether appellant elected to have the trial judge assess punishment
because of his attorney=s influence
or advice.  Further, it does not reflect
whether the decision to have the trial judge assess punishment was a valid
tactical decision by trial counsel, nor does it reflect that appellant=s sentencing election would have been different had he been informed
of the legal impact of a deadly weapon affirmative finding.  Thus, we hold that appellant has not brought
forward a record upon which we can determine that he received ineffective
assistance of counsel.  Bone, 77
S.W.3d at 836; Kirk, 199 S.W.3d at 481-82; Redmond, 30 S.W.3d at
698.  We overrule his second
point.








Conclusion

Having overruled both of
appellant=s points, we
affirm the trial court=s judgment.

 

PER CURIAM

                                                    

PANEL
A:  LIVINGSTON, J.; CAYCE, C.J.; and
MCCOY, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
February 7, 2008

 











[1]See Tex.
R. App. P. 47.4.





[2]Because
appellant=s
sufficiency of the evidence challenge relates to whether the evidence was
sufficient to establish he was a gang member, we will address that evidence
later in the opinion.





[3]At
trial, Cabrera was partially paralyzed on his left side, had impaired use of
his hand, walked with a limp, and had trouble with his speech.  The bullet remained lodged in his brain.