**MODIFY and AFFIRM; and Opinion Filed July 24, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00153-CR

### JOSHUA CORNELL SKINNER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-20176-Q**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Fillmore

A jury convicted Joshua Cornell Skinner of aggravated sexual assault of a child under the age of fourteen, found Skinner placed the child in fear that death or serious bodily injury would be imminently inflicted on her, and assessed punishment of life imprisonment. In five issues, Skinner complains the trial court erred by commenting on the weight of the evidence, determining the child's mother was the proper outcry witness, and including a punishment enhancement issue in the guilt-phase charge; he received ineffective assistance of counsel at the motion for new trial stage; and the judgment should be modified to reflect the sentence imposed by the jury. We modify the judgment to reflect the jury sentenced Skinner to life imprisonment, the complainant, D.O., was thirteen years old at the time of the offense, and Skinner is subject to sex offender registration requirements. As modified, we affirm the trial court's judgment.

## Background[1]

Skinner and D.O.'s mother (Mother) were in a romantic relationship and had a child together. Skinner and Mother began having "issues" and Mother ended the relationship, but allowed Skinner to sleep in her apartment on the couch. On July 17, 2015, Mother was at work and D.O., who was thirteen years old, asked Skinner to bring her some fingernail polish remover. Skinner brought the fingernail polish remover to the apartment and stayed with D.O. at the apartment.

D.O. fell asleep on the chaise in the living room and then moved to her bedroom to take a nap. D.O. was awakened by Skinner opening her door in an aggressive manner. Skinner then started "throwing" D.O. around and attempting to remove her shorts and underwear. D.O. resisted by hitting Skinner in the face a number of times and the two fell to the floor. Skinner choked D.O. until she felt weak and almost passed out. Skinner removed D.O.'s shorts and underwear, dragged her into her mother's room, took a condom from that room, and then dragged her back to her bedroom. Skinner told D.O. that if she did not stop fighting, he would kill her and her family. He then placed a condom on his penis and had sexual intercourse with D.O.

After Skinner left the apartment, he called D.O., told her where the condom was located, and instructed her to flush the condom down the commode. D.O. found the condom and, while still on the phone with Skinner, pretended to flush it down the commode. She then hid the condom in her bathroom.

When Mother arrived home, D.O. told her about the assault, and Mother called the police. The police collected evidence from the apartment, including D.O.'s clothes, bedding from D.O.'s room, and the condom.

---

[1] Because Skinner has not challenged the sufficiency of the evidence to support the conviction, we recite only those facts necessary to address his complaints on appeal.

Mother took D.O. to Children's Medical Center, where D.O. was examined by Virginia Young, a sexual assault nurse examiner. Young observed a focal bruise on D.O.'s hymen that could only have been caused by a "penetrating injury." Young noted that D.O.'s fossa navicularis was abraded and red, which could also have been due to a "penetrating injury." D.O. also had scratches on her face.

Chelsy Wingate, a forensic scientist, performed serology testing on underwear that was collected by the police from D.O. and on the underwear worn by D.O. to Children's. Both pairs of underwear tested positive for the presence of semen. Wingate also performed DNA testing on swabs taken from the inside and the outside of the condom as it was received from the police.[2] These tests indicated two people contributed to the DNA on the condom, and D.O. and Skinner could not be excluded as contributors. For the DNA mixture from the outside of the condom, it was 76.7 quadrillion times more likely that the DNA mixture came from D.O. and an unknown individual than from two unrelated, unknown individuals and 24,400 times more likely the DNA mixture came from Skinner and an unknown individual than from two unrelated, unknown individuals. For the DNA mixture from the inside of the condom, it was 62 quadrillion times more likely that the DNA mixture came from D.O. and an unknown individual than from two unrelated, unknown individuals and 2.04 billion times more likely the DNA mixture came from Skinner and an unknown individual than from two unrelated, unknown individuals.

Skinner was indicted for aggravated sexual assault of a child under the age of fourteen. The indictment also alleged that Skinner placed D.O. in fear that death, serious bodily injury, or kidnapping would be imminently inflicted on her.[3] The jury convicted Skinner of aggravated

---

[2] The condom was torn and Wingate did not know which side was originally the outside of the condom. She referred to the "outside" and the "inside" of the condom based on the condition in which she received it.

[3] During trial, the State abandoned the allegation that Skinner placed D.O. in fear that she would be kidnapped.

sexual assault of a child under the age of fourteen, found that Skinner placed D.O. in fear of imminent death or serious bodily injury, and assessed punishment of life imprisonment.

## Comment on the Weight of the Evidence

In his first issue, Skinner contends the trial court improperly commented on the weight of the evidence. Article 38.05 of the code of criminal procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the evidence or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). The trial judge has a duty to comply with the statute. *Proenza v. State*, 541 S.W.3d 786, 798 (Tex. Crim. App. 2017).

During his cross-examination of the State's witnesses, Skinner's counsel often requested the witness answer a question "yes" or "no." If the witness attempted to answer in another way, Skinner's counsel would interrupt the witness, object the answer was non-responsive, and ask the witness to answer "yes" or "no." The trial court instructed Skinner's counsel on several occasions that many questions could not be answered "yes" or "no," and he needed to allow the trial court to rule on each objection.

While cross-examining Mother, Skinner's counsel asked a number of questions about whether the police collected all of the bedding from D.O.'s room and Mother responded that she did not know if the police took every piece of bedding. This culminated in the following exchange:

Q.     So just so I'm absolutely clear: You don't know if any of your bedding was ever – out – taken out . . . of your daughter's room?

A.     There were items removed.

Q.     And the bedding wasn't included in that?

A.     To my knowledge, there were blankets. I don't – I cannot recall if it was her entire bedding.

–4–

Q. Okay. Well, I'm sorry. Maybe I misspoke.

At this point, the trial court interjected:

> You characterized your question in that manner. That's why she's asking. You characterize all of your questions in absolutes, and then you come back with the negative of it. We can expedite this Cross. You certainly need to ask the questions you want to ask, but she's listening very carefully and trying to be honest. Nothing can be characterized in an absolute.

Skinner did not object to the trial court's comment and did not request that the jury be instructed to disregard the comment.

> After the jury was dismissed for the day, the trial court again addressed Skinner's counsel:
>
> I am sorry that I have lost my temper with you concerning this witness, but it's difficult to watch this dozens [sic] game.
>
> You ask questions in absolutes, and when they answer to the best of their ability, you come back with the exceptions. And I'm sorry, I lost my temper with that, but you know, we can get to the point and we – and not even talk about what went on, on July 15 – 17th, 2015.

Skinner's counsel responded that he was trying to "use a technique to get answers out of this lady that she's got a lot of inconsistencies, and I wasn't able to exploit them." The trial court responded:

> She didn't give you one inconsistency. You asked those questions in absolutes. And she answered honestly, and then you came back with the minimization. And again, I think she is answering honestly.
>
> . . . .
>
> . . . I don't understand why when people are trying to answer, you're constantly cutting them off and telling them they must answer you yes or no. There are very few questions in life that you must answer yes or no, and you're not in a court where I'm gonna force a witness to answer yes or no.
>
> I don't know what went on. I wasn't there. I try to let people explain to put this whole story out and let the jury decide, but when you ask 'em a question, you gotta let 'em answer it.

Skinner argues the trial court improperly commented on the weight of the evidence by "disparaging the technique used by [his] attorney to cross-examine" the State's witnesses. The

State responds that Skinner waived this complaint by not objecting at trial and the trial court's statement does not constitute fundamental error that may be raised for the first time on appeal.

Most appellate complaints must be preserved by timely request for relief in the trial court. Tex. R. App. P. 33.1(a)(1); *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). However, there are some exceptions to this rule. *See Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993). The court of criminal appeals has recognized two "relatively small" categories of errors—violations of "rights which are waivable only" and denials of "absolute systemic requirements"—which may be addressed on appeal regardless of whether an objection was made in the trial court. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (citing *Marin*, 851 S.W.2d at 280). In *Proenza*, the court of criminal appeals concluded that a complaint a trial judge's comments to a witness violated article 38.05 was "at least" a waivable-only right under *Marin* and, therefore, may be raised for the first time on appeal. 541 S.W.3d at 801. We conclude that, because the record does not reflect that Skinner plainly, freely, and intelligently waived his right to the trial judge's compliance with article 38.05, his statutory claim has not been forfeited and may be raised for the first time on appeal. *See id.*

A trial judge must not comment on the evidence in a manner that conveys her opinion of the case to the jury as "[j]urors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon [her] view of the weight of the evidence, or the merits of the issues involved." *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (quoting *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)). A trial judge improperly comments on the weight of the evidence if she makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.); *Nguyen v. State*, 506 S.W.3d 69, 83 (Tex. App.—Texarkana 2016, pet. ref'd). To

–6–

constitute reversible error in violation of article 38.05, the comment in question must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. [Panel Op.] 1981); *see also Clark*, 878 S.W.2d at 226.

Skinner argues his only defense was an attack on the credibility of the State's witnesses and, when the trial court disparaged the technique used by his counsel to cross-examine the witnesses, "it discredited the entire defensive theory and immolated [his] case." However, "[a] trial judge has broad discretion in maintaining control and expediting the trial." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). "Further, a trial judge's irritation at the defense counsel does not translate to an indication as to the judge's views about the defendant's guilt or innocence." *Id.*; *see also Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi 2004, no pet.) ("A judge can lawfully provide guidance and manage the presentation of evidence from the bench without abandoning his role as an independent arbiter.").

In this case, the trial judge's comment was an effort to maintain control and expedite the trial proceedings. While the trial judge expressed frustration with Skinner's counsel's questioning, her comment did not "diminish the credibility of the defense's approach to the case." *See Clark*, 88 S.W.2d at 226.[4] Further, following the comment, Skinner's counsel continued to use the cross-examination technique and continued to challenge the credibility of the State's witnesses. On this record, we cannot conclude the trial judge improperly commented on the weight of the evidence. We resolve Skinner's first issue against him.

### Outcry Witness

In his second issue, Skinner asserts the trial court erred by allowing Mother to testify as the outcry witness under article 38.072 of the code of criminal procedure. Article 38.072 provides

---

[4] *See also Carielo v. State*, No. 04-15-00741-CR, 2017 WL 2960409, at *1 n.1 (Tex. App.—San Antonio July 12, 2017, no pet.) (mem. op., not designated for publication).

–7–

an exception to the hearsay rule in prosecutions of sexual offenses involving a child under the age of fourteen. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2017). A hearsay statement made by a child against whom a sexual offense was allegedly committed is admissible if it describes the alleged offense and is the first statement about the offense that the child made to a person who is eighteen years of age or older. *Id.*; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

There may be only one outcry witness to the child's statement about a single event. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).[5] For a person to be the outcry witness under article 38.072, there must have been more than a general allusion to abuse by the victim. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd). If the child offers only a "general allusion" of sexual abuse to a first person, and then offers a more detailed account to a second person, the second person may be the proper outcry witness. *Garcia*, 792 S.W.2d at 91 (concluding that, because article 38.072 requires more than "general allusion" of sexual abuse, trial court did not abuse its discretion by designating child protective specialist as outcry witness when record was devoid of specific details of statements previously made to child's teacher); *see also Lopez*, 343 S.W.3d at 140.[6] Generally the proper outcry witness is the first adult to whom the child tells "how, when, and where" of the assault. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).[7]

We review a trial court's decision as to the appropriate outcry witness for an abuse of discretion. *Garcia*, 792 S.W.2d at 92. We will not disturb the trial court's determination of the

---

[5] *See also Santiago-Batista v. State*, No. 05-17-00512-CR, 2018 WL 3373038, at *3 (Tex. App.—Dallas July 11, 2018, no pet. h.) (mem. op., not designated for publication).

[6] *See also Suza v. State*, No. 01-17-00116-CR, 2018 WL 2976112, at *6 (Tex. App.—Houston [1st Dist.] June 14, 2018, no pet. h.) (mem. op., not designated for publication).

[7] *See also Suza*, 2018 WL 2976112, at *6.

outcry witness absent a clear abuse of that discretion. *Id.*; *see also Buentello v. State*, 512 S.W.3d 508, 516–17 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (stating appellate court would not reverse trial court's decision to admit outcry-witness testimony "unless it falls outside the zone of reasonable disagreement").

The trial court held a hearing outside the presence of the jury to determine the proper outcry witness. At the hearing, D.O. testified the first person she told about "what happened" with Skinner was her friend, A.B., who was the same age as D.O. The next person D.O. spoke to about Skinner's conduct was A.B.'s mother. D.O. testified she told A.B.'s mother "what happened" and "what he did." D.O., however, did not remember "what words" she used and did not believe she told A.B.'s mother "details" or that Skinner's penis touched her vagina.

D.O. next told Mother about the assault. D.O. testified she told Mother that Skinner raped her. Mother asked D.O. to repeat what she said, and D.O. "just kept telling her." According to D.O., when she told Mother that Skinner "raped" her, she meant that he put his penis and his fingers inside her vagina. D.O. recalled Mother asking if she meant that "his penis went inside my vagina." D.O. believed she told Mother that Skinner's penis went into her vagina.

Mother testified that when she came in the door of the apartment, D.O. began crying and said Skinner had "raped" her. Mother had D.O. "explain to [her] exactly what happened." According to Mother, D.O. said she had fallen asleep in the living room and got up to go to her bedroom. D.O. shut her bedroom door and fell asleep. D.O. told Mother that Skinner came into her room and "stared at her in an abnormal way." He then grabbed her off the bed and took her clothes off. D.O. said she fought back and "punched him a few times," but Skinner did not stop. D.O. told Mother that Skinner went into Mother's bedroom, came back with a condom, put it on, and proceeded to "rape" her. Mother testified that she specifically asked D.O. if Skinner put his penis into her vagina, and D.O. responded that he did.

–9–

Skinner argued at trial, and asserts on appeal, that A.B.'s mother was the proper outcry witness. However, the evidence at the hearing established that D.O. told A.B.'s mother only that Skinner raped her. D.O.'s statement to A.B.'s mother did not describe the offense with any specificity and was only a general allusion of sexual abuse. *See Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (concluding child's statement that defendant was "the one that got me pregnant" might raise inference of penetration, but did "not clearly describe the alleged offense that appellant penetrated Jane's sexual organ"); *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd) (concluding that child's statement to mother that defendant had been performing oral sex on him did not relay any specific details about charged offense for purposes of determining proper outcry witness); *Castelan v. State*, 54 S.W.3d 469, 475–76 (Tex. App.—Corpus Christi 2001, no pet.) (concluding child's statement to grandmother that defendant "put his thing in through the back" did not relay specific details of abuse).[8] In contrast, D.O.'s statement to Mother was detailed and descriptive. D.O. specifically told Mother that Skinner put his penis into her vagina, the offense occurred in the bedroom, she tried to fight Skinner during the assault, and she had possession of a condom used by Skinner during the assault.

On this record, we cannot conclude the trial court clearly abused its discretion by determining Mother was the outcry witness. We resolve Skinner's second issue against him.

## Jury Charge Error

In his third issue, Skinner argues the trial court erred by placing a punishment enhancement issue in the guilt-phase jury charge. At trial, Skinner made no objection to the jury charge.

---

[8] *See also Johnson v. State*, No. 05-09-01492-CR, 2011 WL 1493987, at *1–3 (Tex. App.—Dallas Apr. 20, 2011, no pet.) (mem. op., not designated for publication) (concluding proper outcry witness was police officer and not grandmother, where child told grandmother that she had sex with defendant and told police officer "her dad had penetrated her vagina with his penis and had oral sex with her").

We review a claim of jury charge error in two steps. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). First, we determine whether there is error in the charge. *Id.* Second, if there is error, we review the record to determine whether the error caused sufficient harm to require reversal. *Id.* The degree of harm necessary for reversal depends upon whether the error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, as in the case, error was not preserved, the error requires reversal only if it was "so egregious and created such harm that the defendant did not have a fair and impartial trial." *Marshall*, 479 S.W.3d at 843; *see also Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

"Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016) (quoting *Marshall*, 479 S.W.3d at 843). In conducting an egregious-harm analysis, we consider the entire jury charge, the state of the evidence, the closing arguments of the parties, and any other relevant information in the record. *Arteaga v. State*, 521 SW.3d 329, 338 (Tex. Crim. App. 2017). We must "review the relevant portions of the *entire* record to determine whether [a defendant] suffered actual harm, as opposed to theoretical harm, as a result of the error." *Ambrose*, 487 S.W.3d at 598.

As charged in the indictment in this case, a person commits the offense of aggravated sexual assault by intentionally or knowingly causing his sexual organ to come into contact with the sexual organ of a child younger than fourteen years of age. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(iii),(2)(B) (West Supp. 2017). The offense is a first degree felony with a punishment range of imprisonment for life or for any term imprisonment of not more than ninety-

nine years or less than five years. *Id.* §§ 12.32(a) (West 2011), 22.021(e).[9]  However, if the victim

of the offense is younger than fourteen years of age and the actor places the victim in fear of

imminent death or serious bodily injury, the minimum term of imprisonment is increased to

twenty-five years. *Id.* §§ 22.021(a)(2)(A)(ii), 22.021(f).[10]

> In the guilt phase of the charge, the trial court gave the following instructions to the jury:

> Now, if you find and believe from the evidence beyond a reasonable doubt that the defendant, **JOSHUA CORNELL SKINNER**, on or about the 17th day of July, 2015, in the County of Dallas and State of Texas, did unlawfully then and there intentionally or knowingly cause the contact of the female sexual organ of **[D.O.]**, a child who was not then the spouse of defendant, by an object, to-wit: the sexual organ of the defendant, and at the time of the offense, the child was younger than 14 years of age, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child, as charged in the indictment.

> . . . .

> Now, if you found the defendant guilty of any [sic] of the above offense and you further find beyond a reasonable doubt that the defendant by acts or words, did place the complainant in fear that death or seriously bodily injury, would be imminently inflicted on the complainant, then you will answer the following special issue **"Yes"** and so state in your verdict, but if you do not so find, or if you have a reasonable doubt thereof, you will answer the following special issue **"No"** and so state in your verdict.

The jury found Skinner guilty and answered the special issue in the affirmative.

Skinner argues the "special issue" was a punishment enhancement issue and the trial court

erred by including it in the guilt-phase charge.  However, as set out below, even if the "special

issue" was more appropriately submitted to the jury during the punishment phase of the trial, the

record does not reflect Skinner was egregiously harmed by its submission in the guilt-phase charge.

In conducting the harm analysis, we first review the entire guilt-phase charge.  In the

charge, the trial court instructed the jury on the law relevant to the offense of aggravated sexual

---

[9] The person may also be punished by a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.32(b).

[10] Placing the victim in fear of imminent bodily death or injury can also be an element of the offense of aggravated sexual assault.  TEX. PENAL CODE ANN. § 22.021(a)(1),(2)(A)(ii).

–12–

assault of a child, including the definitions of relevant terms. The trial court applied that law to the facts and instructed the jury it should find Skinner guilty of aggravated sexual assault of a child only if it found, beyond a reasonable doubt, that his sexual organ came into contact with D.O.'s sexual organ and D.O. was less than fourteen years old at the time. The trial court further instructed the jury that, if it did not so find or had a reasonable doubt thereof, it was required to find Skinner not guilty. Finally, the trial court instructed the jury that it should answer the "special issue" only if it had found Skinner guilty. Absent evidence to the contrary, we presume the jury followed these instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011).

As to the state of the evidence, D.O. testified about the assault; Mother testified about D.O.'s outcry; Young testified about the "penetrating injuries" suffered by D.O.; and Wingate testified there were two contributors to the DNA mixture found on the inside and the outside of the condom, both Skinner and D.O. could not be excluded as contributors to the DNA mixtures, and the likelihood that anyone other than Skinner and D.O. contributed to the mixtures was extremely low. D.O. testified that, during the assault, Skinner choked her and threatened to kill her. The jury also heard evidence of statements D.O. made to a police officer and to Young following the assault, and later to her therapist, about Skinner choking and threatening to kill her during the assault. Although Skinner's counsel cross-examined D.O. about purported inconsistencies in her statements, it was the role of the jury to resolve any conflicts in the evidence. *See Zuniga v. State*, No. PD-0174-17, 2018 WL 2711145, at *2 (Tex. Crim. App. June 6, 2018). The jury found D.O. to be credible.

In closing arguments, the prosecutor initially summarized the evidence and argued it established Skinner had sexually assaulted D.O. As to the special issue, the prosecutor stated:

> Now, we talked about the special issue, and that is on page 5 of 9 of this jury charge. The Judge read to you the law. You're gonna get the law as – when you go back there, and the law requires you to find the Defendant guilty, if you believe beyond

–13–

a reasonable doubt that [D.O.] was in fear, that death or serious bodily injury would be imminently inflicted upon the complainant, upon [D.O.]

She testified that it would be. She didn't just testify to it. You saw it in the therapy records. You heard it in that interview. When it comes to making a decision on the special issue, the answer is yes.

The prosecutor then informed the jury about the procedure it needed to follow if it disagreed about any of the evidence.

Skinner's counsel argued D.O was not credible, pointed out inconsistencies in some of her statements, and asserted she had been "helped with this story" during her therapy. He also argued that the mixture of D.O.'s and Skinner's DNA found on the condom could have been from spit, vaginal fluid, or semen, "we don't know where it came from." As relevant to the special issue, Skinner's counsel argued D.O. did not mention any threats involving guns or knives until after she was in therapy. Skinner's counsel argued that D.O. fabricated the allegations because, due to the new baby in the house, she was not getting the attention she wanted, she was angry at Skinner because he refused to buy her an iPhone that she wanted, and she wanted him to leave so that she could get a "new daddy." Skinner's counsel argued that "a single lie discovered is enough to create doubt in every truth expressed," and if the jury was "not sure, that this happened," it was required to acquit Skinner.

In closing, the prosecutor again summarized the evidence that supported a finding that Skinner was guilty of sexually assaulting D.O. She pointed out that Skinner's counsel failed to address either the injuries to D.O.'s face or the vaginal injuries she suffered. The prosecutor argued D.O. had been consistent in her statements throughout the entire process and urged the jury to find Skinner guilty.

The focus of both the prosecutor and Skinner's counsel was D.O.'s credibility and whether the evidence established beyond a reasonable doubt that the sexual assault occurred. Although Skinner's choking and threatening to kill D.O. were mentioned by both the prosecutor and

–14–

Skinner's counsel, those arguments also focused on whether D.O. had been consistent in her statements about what occurred. The mention of the special issue by the prosecutor was brief and not repeated.

Finally, considering any other relevant information in the record, we note that, if the jury found Skinner guilty of sexually assaulting D.O., it was required to answer the special issue at some point during the trial. There is nothing in the record to indicate the submission of the special issue in the guilt-phase charge influenced the jury in its decision on Skinner's guilt. Further, the evidence regarding Skinner's choking D.O. and his threats to kill her was offered only during the guilt phase of the trial. There was no evidence offered in the punishment phase of the trial that would have impacted the jury's answer to the special issue.

After evaluating the entire jury charge, the state of the evidence, the parties' closing arguments, and other relevant information in the record, we conclude the record does not demonstrate that Skinner was egregiously harmed by the submission of the special issue in the guilt-phase jury charge. *See Arteaga*, 521 S.W.3d at 338. Accordingly, we resolve his third issue against him.

**Ineffective Assistance of Counsel**

Relying on *United States v. Cronic*, 466 U.S. 648 (1984), Skinner asserts in his fourth issue that he was effectively denied counsel at the motion for new trial stage. Skinner's trial counsel filed a motion for new trial on grounds the verdict was contrary to the law and the evidence. He also requested the trial court grant a new trial in the interest of justice. On appeal, Skinner argues the motion for new trial "made a generic an [sic] entirely unpersuasive argument based on the sufficiency of the evidence that appears to have been structured for little more than avoiding a claim for ineffective assistance of counsel under *Cronic*." However, Skinner's only specific complaint on appeal is that his trial counsel failed to move for a new trial on the ground that

Skinner's sister overheard several police officers talking about the case after the Rule had been invoked. *See* TEX. R. EVID. 614 (a trial court may, or upon the request of a party must, order witnesses excluded from trial so they cannot hear other witnesses' testimony).

The United States Constitution's guarantee of the right to counsel encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI;[11] *Strickland Washington*, 466 U.S. 668, 686 (1984). In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, we apply the two-prong standard set out in *Strickland. See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). An appellant claiming ineffective assistance of counsel bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694; *Lopez*, 343 S.W.3d at 142.

However, a presumption of prejudice may be warranted when there has an actual or constructive denial of counsel. *Cronic*, 466 U.S. at 658–60; *Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997). In such a case "[n]o specific showing or prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic*, 466 U.S. at 659; *see also Smith v. Robbins*, 528 U.S. 259, 287–87 (2000) (distinguishing complete denial of counsel on appeal, warranting presumption of prejudice, from ineffective assistance of counsel on appeal, which does not warrant such presumption). The presumption of prejudice arises when there are "circumstances that are so likely to prejudice the [defendant] that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. This can occur when (1) the defendant

---

[11] The Sixth Amendment's guarantee of the right to counsel is applicable to the States by virtue of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 339–45 (1963).

is denied the presence of counsel at a critical stage of his trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) circumstances at trial are such that, although counsel is available to assist the defendant during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of counsel. *Id.* at 659–60; *see also Bell v. Cone*, 535 U.S. 685, 695–96 (2002).

The difference in the *Strickland* and *Cronic* standards are not of degree, but of kind. *Bell*, 535 U.S. at 697. For *Cronic* to apply, counsel's failure to test the prosecution's case "must be complete." *Id.* "'[B]ad lawyering, regardless of *how* bad, does not support the . . . presumption of prejudice' under *Cronic*." *Childress*, 103 F.3d at 1229. Rather, prejudice is presumed when the defendant can establish counsel was not merely incompetent but inert. *Id.* at 1228; *see also Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005) (*Cronic* is "epitomized by the 'inert' or 'potted plant' lawyer who, although physically and mentally present in the courtroom, fails to provide (or is prevented from providing) *any* meaningful assistance." (internal footnotes omitted)).

Skinner asserts *Cronic* applies in this case because trial counsel's "form argument" in the motion for new trial had "no chance to succeed and was entirely without merit" and, therefore, failed to subject the prosecution's case to meaningful adversarial testing. In *Jackson v. State*, No. 14-16-00050-CR, 2018 WL 1955026, at *4 (Tex. App.—Houston [14th Dist.] Apr. 26, 2018, no pet.), the Houston Fourteenth Court of Appeals considered whether *Cronic* applied to a claim that counsel was ineffective by failing to secure a hearing and a ruling on a motion for new trial prior to the expiration of the trial court's plenary power. The court noted that, while this "error may have serious implications, it did not render the entire adversarial process 'presumptively unreliable,'" *id.* at *4 n.5, and that "courts considering similar issues, i.e., concerning a failure of

counsel to timely file or obtain a hearing or ruling on a motion for new trial, have consistently required a showing of actual prejudice, meaning that but for counsel's deficient performance, the trial court would have granted the defendant a new trial." *Id.* at *4 (citing *Jimenez v. State*, 240 S.W.3d 384, 415–16 (Tex. App.—Austin 2007, pet. ref'd); *Redmond v. State*, 30 S.W.3d 692, 699 (Tex. App.—Beaumont 2000, pet. ref'd); *Bacey v. State*, 990 S.W.2d 319, 333 (Tex. App.—Texarkana 1999, pet. ref'd); *Bryant v. State*, 974 S.W.2d 395, 400 (Tex. App.—San Antonio 1998, pet. ref'd)). The Fourteenth Court of Appeals joined those courts and held the appellant was "required to establish that but for counsel's unprofessional error, the result would have been different."[12]

In this case, Skinner asserts trial counsel was ineffective by not filing a motion for new trial based on a possible violation of the Rule. This failure, however did not render the entire adversarial process "presumptively unreliable." *See Jackson*, 2018 WL 1955026, at *4 & n. 5; *see also Smith*, 528 U.S. at 287–88 (concluding appellant was required to satisfy both prongs of *Strickland* to establish appellant counsel was ineffective by failing to raise a particular claim on appeal). Skinner, therefore, was required to demonstrate the result of the proceeding would have been different if trial counsel had asserted the ground in the motion for new trial. *See Strickland*, 466 U.S. at 694; *Cronic*, 466 U.S. at 666. Because Skinner has failed to do so, we resolve his fourth issue against him.

### Modification of Judgment

In his fifth issue, Skinner requests that we modify the judgment to reflect the jury imposed a sentence of life imprisonment. The State agrees the judgment should be modified as requested

---

[12] *See also Morales v. State*, No. 05-14-01466-CR, 2016 WL 748535, at *3 (Tex. App.—Dallas Feb. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (requiring, pursuant to *Strickland*, that appellant show result of proceeding would have been different if trial counsel had filed "substantive motion for new trial" rather than "boilerplate motion" that verdict was contrary to law and evidence).

by Skinner and requests that we also modify the judgment to reflect that D.O. was thirteen years old at the time of the offense and sex offender registration requirements apply to Skinner.

The jury found Skinner guilty of aggravated sexual assault of a child and that he placed D.O. in fear of imminent death or serious bodily injury. The offense is a first degree felony with a range of punishment that includes imprisonment for a term of life or for any term of not more than 99 years or less than twenty-five years. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 22.021(e),(f)(2). In the punishment phase of the trial, the jury was correctly charged on the range of punishment for the offense and assessed punishment as confinement for a term of life. The judgment, however, specified punishment as "LIFE WITHOUT POSSIBILITY OF PAROLE."

Life without parole is within the range of punishment specified under the penal code for a capital felony, *see id.* § 12.31(a) (West Supp. 2017), but not for a first-degree felony, *see id.* § 12.32(a). Section 508.145(a) of the government code section specifies that individuals convicted of an offense punishable under section 22.021(f) of the penal code are ineligible for release on parole. TEX. GOV'T CODE ANN. § 508.145(a) (West Supp. 2017). However, that is a function of an inmate's eligibility for parole under the government code, not an aspect of the sentence for his offense under section 22.021(f) of the penal code.[13]

As to the State's request, a conviction for aggravated sexual assault of a child subjects the defendant to the sex offender registration requirements in Chapter 62 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001(5)(a), 62.051(a) (West 2018). A judgment of conviction must include a statement that the registration requirements of Chapter 62 apply to the defendant and a statement of the age of the victim. *Id.* art. 42.01, § 1 (West 2018). Although Skinner is subject to the sex offender registration requirements, the trial court's judgment

---

[13] *See Cruse v. State*, No. 01-13-00077-CR, 2014 WL 3607250, at *4 (Tex. App.—Houston [1st Dist.] July 22, 2014, pet. ref'd) (mem. op., not designated for publication).

states the sex offender registration requirements "do not apply" and contains no information as to D.O.'s age at the time of the offense.

When the record provides the necessary information to correct inaccuracies in a trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.3d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd); *see also Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986). Accordingly, we modify the trial court's judgment to remove the words "WITHOUT POSSIBILITY OF PAROLE" from the sentence and to reflect that D.O. was thirteen years old at the time of the offense and sex offender registration requirements apply to Skinner.

As modified, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.1

170153F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSHUA CORNELL SKINNER,
Appellant

No. 05-17-00153-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. F15-20176-Q.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers and Stoddart
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the judgment titled "Punishment and Place of Confinement" is modified to state "Life."

The section of the judgment relating to sex offender registration is modified to state "Sex Offender Registration Requirements do apply to the Defendant. TEX. CODE CRIM. PROC. ANN. chapter 62. The age of the victim at the time of the offense was 13 years."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 24th day of July, 2018.